[Nos. 63441-6; 63442-4. En Banc.]

Argued May 29, 1996. Decided August 1, 1996.

THE STATE OF WASHINGTON, *Respondent*, v. JAMES DELBERT BRANCH, *Petitioner*.

---

*Nielsen & Acosta*, by *Eric J. Nielsen*, for petitioner.
*Norm Maleng, Prosecuting Attorney*, and *Scott A. Peterson, Deputy*, for respondent.

JOHNSON, J. — This case presents the issue of whether the lack of Defendant's signature on his statement of defendant on plea of guilty amounts to a manifest injustice as a matter of law requiring withdrawal of Defendant's plea. In a separate appeal, Defendant requests review of his exceptional sentence. We affirm the Court of Appeals and hold the lack of Defendant's signature on the statement of defendant on plea of guilty does not constitute a manifest injustice as a matter of law so long as the totality of the circumstances supports finding that the plea and its waiver of rights are intelligently and voluntarily

made, with full knowledge of their consequences. We also affirm Defendant's exceptional sentence.

## FACTS

Over a two-year period, Defendant James Branch used his position as a general partner in the Pace Equity Plus One Limited Partnership (Partnership) to withdraw nearly $400,000 of Partnership funds that he put to personal use. He pleaded guilty to one count of theft in the first degree on June 17, 1993. The statement of defendant on plea of guilty (plea statement) was signed by his defense attorney, the Prosecutor, and the judge; however, Branch did not sign it. There is no explanation in the record or in the briefs as to why Branch did not sign the form.

At the plea hearing, the Prosecutor questioned Branch extensively regarding his plea statement. With Branch holding a copy of the form in his hand, the Prosecutor went over its contents step-by-step, specifically asking Branch about his understanding of: (1) the elements of the crime; (2) the standard range sentence; (3) the Prosecutor's recommended sentence; (4) the judge's discretion to disregard the recommendation; (5) the sentencing court's ability to use the statement of probable cause as real facts; (6) the rights he was waiving; and (7) his statement admitting guilt. The court then questioned Branch regarding his plea. The judge specifically asked Branch if he understood the sentencing recommendation, the judge's freedom to disregard the recommendation, and the rights he was waiving. Finding Branch was knowingly, voluntarily, and intelligently entering the plea, the court ordered the plea of guilty entered.

The sentencing hearing was held on August 6, 1993, before a different judge. Branch's standard sentencing range was 0 to 90 days. Following statements by the Prosecutor, several of the Partnership investors, defense counsel, and the Defendant, the court sentenced Branch to 48 months' incarceration. In his oral ruling, the judge

stated he was primarily relying on the economic impact of the theft and the number of victims to justify the exceptional sentence. The judgment and sentence also ordered Branch to pay $398,652.91 in restitution. The judge entered the following findings of fact and conclusions of law in support of the exceptional sentence:

> The court finds that there were 180 victims, that the loss as a result of defendant's criminal conduct, that the crime involved planning, a lengthy period of time, and abuse of trust.
>
> . . . .
>
> The court concludes that defendant's crime constitutes a major economic offense justifying an exceptional sentence.

Clerk's Papers at 35.

On August 16, 1993, Branch, represented by new counsel, filed a motion and declaration for new sentence and judgment. A hearing on this motion was held before the same sentencing judge on August 19, 1993. Defense counsel argued Branch had pleaded guilty to a single unauthorized withdrawal of $3,297.87 occurring on October 25, 1989, there was only one victim (not 180), and there was no support in the record for a finding of planning. The court denied the motion, and entered corrected findings of fact and conclusions of law, under CrR 7.8. The corrected findings and conclusions stated:

> The court finds that there were 180 victims of defendant's crime, that the loss as a result of defendant's crime was $398,652.91, that defendant planned the crime, that the crime occurred between July 2, 1987, and October 25, 1989, and that defendant committed the crime while in a position of trust as a general partner of the Pace Equity Plus One limited partnership and a signatory on the partnership's bank account;
>
> . . . .
>
> The court concludes that the current offense was a major economic offense because it involved multiple victims, actual

monetary loss substantially greater than typical for the offense, considerable planning, abuse of trust, and occurred over a lengthy period of time. The court also concludes that any of these reasons alone would be sufficient to impose an exceptional sentence.

Clerk's Papers at 36. Branch appealed the exceptional sentence and the amount of the restitution.

On June 17, 1994, represented by a third attorney, Branch filed a motion to withdraw his guilty plea. The same judge who accepted Branch's plea denied the motion. In a second appeal, Branch challenged the denial of the motion to withdraw his guilty plea.

The Court of Appeals, in two separate, unpublished per curiam decisions affirmed the denial of Branch's motion to withdraw his guilty plea and the exceptional sentence. We granted Branch's petition for discretionary review on both issues and affirm.[1]

## ANALYSIS

### I

█ We first address Branch's appeal of the denial of the motion to withdraw his guilty plea. Under CrR 4.2(f), a court must allow a guilty plea to be withdrawn whenever it appears withdrawal is necessary to correct a manifest injustice. This rule imposes a demanding standard on the defendant to demonstrate a manifest injustice, i.e., "an injustice that is obvious, directly observable, overt, not obscure." *State v. Saas*, 118 Wn.2d 37, 42, 820 P.2d 505 (1991) (quoting *State v. Taylor*, 83 Wn.2d 594, 596, 521 P.2d 699 (1974)). Branch argues the lack of his signature on the plea statement constitutes a manifest injustice because it shows he did not knowingly, intelligently, and voluntarily waive his constitutional rights.

---

[1]While Branch made numerous arguments in support of his motion to withdraw his guilty plea, the only argument he makes to this court concerns his failure to sign the statement of defendant on plea of guilty; therefore, that is the only issue we consider in connection with his motion to withdraw his guilty plea.

■ In entering a plea of guilty, a defendant necessarily waives important constitutional rights, including the right to a jury trial, to confront one's accusers, and the privilege against self-incrimination. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *Wood v. Morris*, 87 Wn.2d 501, 505, 554 P.2d 1032 (1976); *see generally* 13 ROYCE A. FERGUSON, JR., WASH. PRAC., *Criminal Practice and Procedure* § 3212 (1984). To be valid, a guilty plea must be intelligently and voluntarily made and with knowledge that certain rights will be waived. *Wood*, 87 Wn.2d at 505-06. Whether a plea is knowingly, intelligently, and voluntarily made is determined from a totality of the circumstances. *Wood*, 87 Wn.2d at 506.

■ CrR 4.2 contains numerous procedural safeguards designed to insure a defendant's constitutional rights are protected before a guilty plea is accepted. *State v. Taylor*, 83 Wn.2d 594, 596, 521 P.2d 699 (1974). However, the procedural requirements of CrR 4.2 are not constitutionally mandated. *See Wood*, 87 Wn.2d at 511; *In re Hilyard*, 39 Wn. App. 723, 727, 695 P.2d 596 (1985). Failure to adhere to the technical requirements of CrR 4.2(g) does not in itself result in a constitutional violation or amount to a manifest injustice. Nonetheless, this court has held CrR 4.2 requires that the record of the plea hearing show the plea was entered voluntarily and intelligently. *Wood*, 87 Wn.2d at 511. Although a defendant's signature on a plea statement is strong evidence of a plea's voluntariness, the absence of a signature does not necessarily vitiate the plea's voluntariness.[2]

We have previously discussed, albeit in a different context, the issue of when a defendant does not sign a written waiver of constitutional rights. In *State v. Rupe*,

---

[2]*See also State v. Perez*, 33 Wn. App. 258, 261-62, 654 P.2d 708 (1982): "When a defendant fills out a written statement on plea of guilty in compliance with CrR 4.2(g) and acknowledges that he or she has read it and understands it and that its contents are true, the written statement provides prima facie verification of the plea's voluntariness. When the judge goes on to inquire orally of the defendant and satisfies himself on the record of the existence of the various criteria of voluntariness, the presumption of voluntariness is well nigh irrefutable." (Citations omitted).

101 Wn.2d 664, 683 P.2d 571 (1984), the defendant argued his confession must be suppressed because he did not sign the written waiver of his *Miranda* rights. *Rupe*, 101 Wn.2d at 678. We disagreed:

> An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case.

*Rupe*, 101 Wn.2d at 678 (quoting *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979)).

We find the analysis in *Rupe* equally applicable in the present context. Branch's plea statement, when examined in conjunction with the verbatim record of proceedings of the plea hearing, establishes his plea was knowing, intelligent, and voluntary. The plea statement fully sets forth the constitutional rights at issue on page two, paragraph five. In response to the Prosecutor's questions, Branch stated that he: (1) had a copy of the form in front of him; (2) had read it and gone through it with his attorney; (3) understood it; (4) knew he was giving up the rights listed on the plea statement; (5) had not been threatened; and (6) had not been promised anything in return for pleading guilty. Branch responded "no" when the judge asked him if he had any questions about the rights he was giving up in pleading guilty. The judge, Prosecutor, and defense attorney all signed the plea form, and the record is silent as to why Branch did not sign it.[3] In light of all this evidence contained in the record of the plea hearing, we find Branch's plea of guilty was knowing, intelligent, and voluntary. Additionally, Branch's conduct at the plea hear-

---

[3]While Branch did not sign the plea statement, he did sign the plea agreement (along with defense counsel, the prosecuting attorney, and the judge) which has the same cause number and date as the plea statement. The plea agreement does not contain a list of the rights waived by Defendant or a list of the elements of the charged crime.

ing amounts to an oral ratification of the plea statement and further establishes that his plea was knowing, intelligent, and voluntary. *See In re Keene*, 95 Wn.2d 203, 206-07, 622 P.2d 360 (1980) (holding defendant could not, on appeal, deny facts in plea statement prepared by his attorney when the defendant had told the trial court he read the statement and that its contents were true).

Branch also argues it was constitutional error when the trial judge failed to expressly articulate the three constitutional rights listed in *Boykin* as being waived by a plea of guilty.[4] Immediately prior to entering the plea, the court asked Branch if he had any questions regarding the rights he was giving up but did not state what those rights were. Branch's argument is not well taken. In *Wood* we held "there is no constitutional requirement that there be express articulation and waiver of the three rights referred to in *Boykin* by the defendant at the time of acceptance of his guilty plea if it appears from the record . . . that the accused's plea was intelligently and voluntarily made, with knowledge of its consequences." *Wood*, 87 Wn.2d at 508.

■ We hold the lack of a defendant's signature on a plea statement does not constitute a manifest injustice as a matter of law so long as the totality of the circumstances demonstrates the defendant's plea and its waiver of rights is intelligently and voluntarily made, with full knowledge of its consequences. The circumstances in this case so demonstrate.

## II

■ Next, we review the trial court's imposition of an exceptional sentence. The Sentencing Reform Act of 1981 (SRA) authorizes judges to impose sentences outside the standard range if "there are substantial and compelling reasons justifying an exceptional sentence." RCW

---

[4]Those three rights are: (1) the right to a jury trial; (2) the right to confront one's accusers; and (3) the privilege against self-incrimination. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

9.94A.120(2). The SRA includes a list of illustrative aggravating and mitigating circumstances a court may consider in imposing an exceptional sentence. RCW 9.94A.390. One of the listed aggravating circumstances is for major economic offenses. RCW 9.94A.390(2)(c). A major economic offense can be identified by consideration of *any* of the following factors:

(i) The current offense involved multiple victims or multiple incidents per victim;

(ii) The current offense involved attempted or actual monetary loss substantially greater than typical for the offense;

(iii) The current offense involved a high degree of sophistication or planning or occurred over a lengthy period of time; or

(iv) The defendant used his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense.

RCW 9.94A.390(2)(c). The sentencing court held Branch's theft was a major economic offense based on its findings that the theft involved "multiple victims, actual monetary loss substantially greater than typical for the offense, considerable planning, abuse of trust, and occurred over a lengthy period of time." Clerk's Papers at 29. Although the trial court found all four subfactors, any one of these factors would provide a sufficient basis to find Branch's theft is a major economic offense. *See* DAVID BOERNER, SENTENCING IN WASHINGTON § 9.13(c), at 9-40 (1985) (single factor sufficient to justify finding the aggravating circumstance "major economic offense").

Appellate review of an exceptional sentence is governed by RCW 9.94A.210(4). This provision requires review of three specific issues:

1. Are the reasons given supported by evidence in the record? As to this, the standard of review is "clearly erroneous."

2. Do the reasons justify a departure from the standard range? The standard of review on this is as a "matter of law."

3. Is the sentence clearly [too excessive or] too lenient? The standard of review on this last question is "abuse of discretion."

*State v. Garza*, 123 Wn.2d 885, 889, 872 P.2d 1087 (1994) (alteration in original) (quoting *State v. Allert*, 117 Wn.2d 156, 163, 815 P.2d 752 (1991)); RCW 9.94A.210(4).

Branch argues (1) there is no support in the record for the court's findings regarding the amount of the loss and lengthy period of time; (2) the court's findings regarding multiple victims, considerable planning, and abuse of trust are legally insufficient; and (3) the 48-month sentence is clearly excessive. We affirm the trial court's reliance upon and findings of multiple victims, actual monetary loss substantially greater than typical, and lengthy period of time. Because those three findings are more than sufficient to support the aggravating circumstance of major economic offense, we find it unnecessary to address or discuss abuse of trust.

## Monetary Loss and Lengthy Period of Time

■ As noted above, the clearly erroneous standard of review is used to review a sentencing court's findings of fact made in support of an exceptional sentence. *See Garza*, 123 Wn.2d at 889. Under the clearly erroneous standard, reversal is required only if there is not substantial evidence supporting the findings. *State v. Russell*, 69 Wn. App. 237, 250, 848 P.2d 743, *review denied*, 122 Wn.2d 1003 (1993). In this case, the sentencing court found the loss as a result of Branch's crime was $398,652.91 and the crime occurred between July 2, 1987 and October 25, 1989.

The record before the sentencing court included the transcript of the plea hearing, the amended information, the plea statement, the certificate of probable cause, and the defense presentence report. As recorded in the transcript of the plea hearing, Branch and his attorney agreed to restitution of over $400,000 and to allow the sentencing judge to consider the facts in the certificate of

probable cause as real facts. The certificate of probable cause lists 46 withdrawals from the Partnership account and 44 corresponding deposits to Branch's personal accounts, which funds were later used for Branch's personal expenses. Those withdrawals covered a 27-month period of time and totaled over $390,000. The certificate of probable cause states that over $600,000 of the Partnership's capital was missing and unaccounted for. Additionally, in the defense presentence report, defense conceded the amount of money involved was greater than the amount in a typical first degree theft. Finally, paragraph 11 of Branch's plea statement admits the theft occurred over a two-year period. This record contains substantial evidence supporting the sentencing court's factual findings of actual monetary loss greater than typical and lengthy period of time; therefore, those findings are not clearly erroneous.

## Multiple Victims and Planning

■ Branch argues the sentencing court erred as a matter of law in finding the multiple victims and highly sophisticated planning factors were met in this case. These issues present questions of law and are reviewed de novo. *See Garza*, 123 Wn.2d at 889.

## Multiple Victims

■ The SRA defines a victim as "any person who has sustained emotional, psychological, physical, or financial injury to person or property as a direct result of the crime charged." RCW 9.94A.030(37). The sentencing court found that the 180 limited partners who lost the money they invested in the Partnership were all victims. Case law addressing the SRA's definition of victim supports this finding. *State v. Davison*, 116 Wn.2d 917, 920-21, 809 P.2d 1374 (1991) (employer (City of Seattle) of an assault victim was additional victim of offense for purpose of awarding restitution); *State v. Davis*, 53 Wn. App. 306, 310, 766 P.2d 1120 (a victim under the SRA is one whose injuries were proximately caused by conduct forming the basis of the

crime charged), *review denied* 112 Wn.2d 1015 (1989). In this case, the limited partners' monetary losses were proximately caused by Branch's criminal conduct. As a matter of law, the sentencing court did not err in finding the 180 limited partners constitute multiple victims.

Branch also argues his state and federal constitutional rights to equal protection and due process are violated by this interpretation and application of the "multiple victim" factor. Specifically, he argues the SRA's definition of victim (RCW 9.94A.030(37)), as applied through RCW 9.94A.390(2)(c)(i) to crimes against business organizations, is overbroad and vague in violation of his substantive due process rights. He also argues the classification of crimes against multiple victims violates the equal protection clause.

■ ■ Branch's overbreadth argument is not well taken. Statutes are presumed valid and the burden rests on the challenger to show otherwise. *Louthan v. King County*, 94 Wn.2d 422, 428, 617 P.2d 977 (1980). Overbreadth arguments apply only where there is a question of whether the statute infringes on constitutionally protected activity. *State v. Parker*, 97 Wn.2d 737, 740, 649 P.2d 637 (1982). Branch has failed to demonstrate that these provisions of the SRA infringe on any constitutionally protected activities; therefore, Branch has failed to meet his burden.

■ The vagueness argument is also unpersuasive. The test for vagueness of provisions in the SRA is whether a person of reasonable understanding is required to guess at the meaning of the statute. *In re Myers*, 105 Wn.2d 257, 267, 714 P.2d 303 (1986). RCW 9.94A.030(37) and RCW 9.94A.390(2)(c)(i) are not unconstitutionally vague as applied to the facts of this case. A person of reasonable understanding can comprehend the definition of victim and understand that an economic crime committed against multiple victims may be subject to an exceptional sentence.

■ ■ Branch also challenges RCW 9.94A.390(2)(c)(i)

on equal protection grounds, arguing his right to equal protection under the laws is violated by the SRA's imposition of harsher sanctions on criminals convicted of committing crimes against multiple victims. Because the classification of "criminals convicted of crimes against multiple victims" is not based on a suspect class and does not affect a fundamental right, the rationale relationship test applies. *State v. Ward*, 123 Wn.2d 488, 516, 869 P.2d 1062 (1994) (liberty interests alone are not sufficient to subject statute to strict scrutiny). Therefore, Branch's argument fails because the classification of imposing harsher sentences for defendants convicted of crimes against multiple victims is rationally related to the legitimate objective of the SRA to "[e]nsure that the punishment for a criminal offense is proportionate to the seriousness of the offense . . . ." RCW 9.94A.010(1).

## Planning

 The sentencing court concluded Branch's theft involved "considerable planning." Branch argues "considerable planning" does not rise to the level of the "high degree of . . . planning" required in RCW 9.94A.390(2)(c)(iii). This issue is irrelevant. RCW 9.94A.390(2)(c)(iii) states in full: "The current offense involved a high degree of sophistication or planning *or* occurred over a lengthy period of time." (Emphasis added). As discussed above, the sentencing court correctly found this offense occurred over a lengthy period of time; therefore, the lengthy period of time prong serves to establish this factor whether or not "considerable planning" equates to "a high degree of planning."

## Clearly Excessive

 The length of an exceptional sentence will not be reversed as clearly excessive absent an abuse of discretion. *State v. Ritchie*, 126 Wn.2d 388, 392, 894 P.2d 1308 (1995) (citing *State v. Oxborrow*, 106 Wn.2d 525, 530, 723 P.2d 1123 (1986)). A sentence is clearly excessive if it is

based on untenable grounds or untenable reasons, or an action no reasonable judge would have taken. *Oxborrow*, 106 Wn.2d at 531. In *Oxborrow*, we held the sentencing court did not abuse its discretion by imposing an exceptional sentence of 10 years (the statutory maximum) for a conviction on one count of first degree theft. *Oxborrow*, 106 Wn.2d at 533. There, the defendant pleaded guilty to one count of theft in the first degree under RCW 9A.56.020(1)(a) for defrauding 51 investors of over $1 million. *Oxborrow*, 106 Wn.2d at 528.

■ Branch argues no reasonable judge would sentence him to 48 months, which is 16 times the standard sentencing range (0 - 90 days). He offers no authority for this argument. A sentence of 48 months for a theft of nearly $400,000 is not a sentence based on untenable grounds or made for untenable reasons.

We affirm the finding that this theft was a major economic offense because the factors of actual monetary loss greater than typical and the lengthy period of time are supported by substantial evidence, and the court did not err as a matter of law in finding multiple victims. These three factors support the statutory aggravating circumstance of major economic offense and, therefore, the imposition of an exceptional sentence. We also find the trial court did not abuse its discretion in imposing a 48-month sentence because 48 months is not a clearly excessive sentence for a theft of nearly $400,000.

Branch argues if we do not affirm all of the factors found by the trial court, *State v. Smith*, 123 Wn.2d 51, 864 P.2d 1371 (1993) requires the case be remanded for resentencing. *Smith*, 123 Wn.2d at 58 (remand for resentencing required where two of four aggravating circumstances are invalid and court found it unclear whether the judge would have imposed the same sentence based only on the two remaining aggravating circumstances). *Smith* does not apply to the facts of this case. The sentencing judge here relied on only one statutory aggravating circumstance: major economic offense. He based that holding on

his finding that all four of the subfactors were present in this case. RCW 9.94A.390(2)(c) specifically states a major economic offense can be established by consideration of *any* of the four subfactors. Thus, the aggravating circumstance of major economic offense will remain a valid reason for imposing an exceptional sentence if even one of the subfactors is satisfied.

## III

Finally, Branch argues the court erred in ordering $398,652.91 in restitution because that amount is not supported in the record. As previously discussed, Branch agreed to pay restitution of over $400,000 at his plea hearing, and orally waived his right to a restitution hearing. At sentencing, the amount was lowered to $398,652.91. Also, during the sentencing hearing Branch told the court he accepted responsibility for his actions and wanted the opportunity to make his victims whole again. Branch failed to challenge the amount of restitution at that sentencing hearing and at the later hearing on the motion to reconsider.

Branch's failure to raise this issue at the trial court and his agreement to pay restitution waive his right to argue the sufficiency of the record on appeal. *See State v. Young*, 63 Wn. App. 324, 330, 818 P.2d 1375 (1991) (on appeal, defendant cannot challenge child support as part of restitution order when he agreed to pay child support as part of criminal restitution); *State v. Harrington*, 56 Wn. App. 176, 181, 782 P.2d 1101 (1989) (failure to object to amount of restitution order at trial precluded review on appeal). We affirm the award of restitution in the amount of $398,652.91.

## CONCLUSION

We affirm the trial court's denial of Branch's motion to withdraw his guilty plea. We also affirm the 48-month

exceptional sentence based on the sole aggravating circumstance of major economic offense and the award of restitution in the amount of $398,652.91.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, MADSEN, ALEXANDER, and SANDERS, JJ., concur.

Reconsideration denied September 25, 1996.