[No. 60724-9.   En Banc.   May 19, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. LEONICIO GARZA, *Petitioner*.

*Carl G. Sonderman,* for petitioner.

*Dennis DeFelice, Prosecuting Attorney,* and *Steve Cox* and *Ann Marie DiLembo, Deputies,* for respondent.

ANDERSEN, C.J. —

FACTS OF CASE

The Defendant, who pleaded guilty to the crime of first degree rape, challenges his exceptional sentence; his pres-

ent claim is that the trial court's findings in support of the sentence are not supported by the record. We affirm.

The presentence investigation report and the transcribed statement of a participant in the crime[1] show that on the afternoon of August 7, 1991, Defendant Leonicio (Leo) Garza, his sister Gloria Garza, Leo's nephew and Gloria's son Robert Eriksson, along with another young woman, drove to the home of the female victim in order to "scare" or "take care of" her.

Before reaching the victim's home, the Garzas and the others stopped at a store where Leo Garza allegedly shoplifted some duct tape and possibly a can of gold spray paint, a razor and some scissors.

The four then drove to the victim's residence. There they enticed her to come out of her home and over to their car, saying someone wanted to talk to her. As she looked into the car the victim was pushed into the back seat. Her hands were bound and her eyes covered with duct tape. The victim was told that if she screamed she would be killed. Although her eyes were covered, the victim had partial vision out of one eye. The victim was then driven to a remote area of Franklin County. She was pushed out of the car and onto the ground, and was again told not to scream. She was then stripped of her clothing. Her head hair was cut off, her pubic hair was shaved, and gold paint was sprayed on her breasts. This was done by Leo and Gloria Garza. The victim was then pushed against the car and raped anally and vaginally by Leo Garza. Robert Eriksson also raped the victim when he was encouraged to do so by his mother, Gloria Garza. The victim was then kicked in the vaginal area by Gloria Garza. Gloria and Leo Garza then made a "tail" by wrapping a coat hanger around a table knife and attaching a scarf to the end of it; this "tail" was inserted into the victim's rectum by Gloria and Leo.

---

[1]The statement of the accomplice is included in the appendix to Defendant's brief and to his petition for review. It is not clear whether this statement was before the trial court at the time of sentencing, but it was referenced in the presentence report.

The attackers then left the victim and drove from the area. The victim, still bound, gagged and naked, managed to walk to a residence where she received help.

Leo Garza was eventually charged with first degree rape on December 17, 1991.[2]

Leo Garza pleaded guilty to first degree rape.[3] The validity of his guilty plea is not challenged. In exchange for Leo Garza's guilty plea, the prosecuting attorney agreed to recommend a sentence within the standard range (the prosecutor recommended the top end of the range). Neither of the Garzas admitted being a principal, both claiming to be mere accomplices. Gloria Garza acknowledged that she "knowingly aided another in kidnapping victim and in aiding another to have sexual intercourse by forcible compulsion." Leo Garza acknowledged that he "assisted in the kidnapping of another and was an accomplice to her rape."

At sentencing, the trial court considered the statement of Defendant on plea of guilty and the information contained in the presentence report. That report sets forth what it refers to as the "official" version of the offense, essentially relating the facts set forth above, as well as the Defendant's version of the offense. The Defendant's version, as stated in the presentence report, is as follows:

> Leo Garza . . . states that he was asked to accompany Gloria Garza, Robert Erickson [sic] and another female subject to [Franklin County] "to scare somebody". He states that he drove the vehicle and that the victim was picked up in [Franklin County] and taken out to a[n] isolated area. He also stated that he did not participate in the rape of the victim, nor did he

---

[2]RCW 9A.44.040(1)(b), (c), the statute under which Garza was charged, provides:

"(1) A person is guilty of rape in the first degree when such person engages in sexual intercourse with another person by forcible compulsion where the perpetrator or an accessory:

". . .

"(b) Kidnaps the victim; or

"(c) Inflicts serious physical injury; . . ."

[3]Gloria Garza also pleaded guilty to first degree rape. She appealed her exceptional sentence and her appeal was consolidated in the Court of Appeals with that of Leo Garza. The facts relating to Ms. Garza are taken from the unpublished opinion of the Court of Appeals; she did not petition for review.

see anything that happened even though the rape of the victim took place on the hood of the vehicle while Garza was seated inside. Garza states that after the incident was over he got out of the car and told the victim that there was a farm house down the road before [sic]. This information is not in any of the reports taken by the police. When queried about the victim's state when Garza talked to her, he stated that she had duct tape on her face, her hands were tied behind her and she was naked.

The presentence report further states:

The offender (Garza) refuses to admit to participation in any of the events of the rape and humiliation of the victim. This is in contrast to the police reports and victim's statement. . . . He shows no outward sign of remorse or empathy for the victim.

Robbie Erickson [sic], in a taped statement, identified Leo Garza as the person who raped the victim, anally and vaginally and helped insert the device in her rectum. Another statement, from an acquaintance, reported that Garza "bragged" about what he did to the victim. ·

The Defendant did not specifically challenge any of the information contained in the presentence report, nor did he at any time request an evidentiary hearing to controvert any of the information contained in the report. His sister, Gloria Garza, had been sentenced 2 weeks earlier by the same sentencing judge and had received an exceptional sentence; she was sentenced to 176 percent of the top of the standard range.

The trial court entered findings of fact in support of Leo Garza's exceptional sentence. Those findings reflect the information contained in that part of the presentence report which was based on the victim's statements and police reports. The trial court specifically found that the victim was raped vaginally and anally by Leo Garza, and then concluded that

defendant Leo Garza manifested extreme and deliberate cruelty to the victim . . . which constitutes a substantial and compelling reason for the imposition of an exceptional sentence.

The trial court then sentenced Leo Garza to 200 months, 176 percent of the top of the standard range.

The Defendant appealed the exceptional sentence to the Court of Appeals on the grounds that the trial court's findings were not supported by the record and that the sentence was clearly excessive. The Court of Appeals, in an unpublished opinion, affirmed his exceptional sentence.

|Leo Garza petitioned this court for review on the ground that the exceptional sentence was not supported by the record before the trial court. We granted review.

One issue is dispositive of this appeal.

ISSUE

Did the sentencing court err in considering facts contrary to Defendant's version of the crime, without first holding an evidentiary hearing, when it determined that an exceptional sentence was warranted?

DECISION

CONCLUSION. A sentencing court is not required to hold an evidentiary hearing where the defendant does not specifically object to factual statements made in a presentence report and does not request an evidentiary hearing to challenge disputed statements.

■ Generally, in reviewing the appropriateness of an exceptional sentence, an appellate court answers the following three questions under the indicated standards of review:

1. Are the reasons given supported by evidence in the record? As to this, the standard of review is "clearly erroneous".

2. Do the reasons justify a departure from the standard range? The standard of review on this is as a "matter of law".

3. Is the sentence clearly [too excessive or] too lenient? The standard of review on this last question is "abuse of discretion".

(Footnotes omitted.) *State v. Allert*, 117 Wn.2d 156, 163, 815 P.2d 752 (1991).[4]

We need address only the first question in the present case.

Defendant Leo Garza's claim here is that the evidence *properly* considered by the trial court did not support the reasons for the exceptional sentence. He argues that the

---

[4]*See also* RCW 9.94A.210(4); *State v. Nguyen*, 68 Wn. App. 906, 917, 847 P.2d 936, *review denied*, 122 Wn.2d 1008 (1993).

presentence investigation report showed two interpretations of the facts. Because his version of the crime differed from the victim's version and that set forth in police reports, Defendant argues that the trial court was prohibited from considering any fact not contained in Defendant's version of the crime.

The Sentencing Reform Act of 1981 (SRA), RCW 9.94A, provides:

> In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. *Acknowledgement includes not objecting to information stated in the presentence reports.* Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point. The facts shall be deemed proved at the hearing by a preponderance of the evidence.

(Italics ours.) RCW 9.94A.370(2) (part). No objection was ever made by the Defendant to any of the information contained in the presentence report and the trial court therefore properly deemed that information to be acknowledged by the Defendant.

The Superior Court Criminal Rules also are pertinent. CrR 7.1(c) requires defense counsel and the prosecuting attorney to notify opposing counsel and the court, at least 3 days before the sentencing hearing, of any part of the presentence report that will be controverted by the production of evidence. No such notice was given here.

■ In short, in order to dispute any of the information presented for consideration at a sentencing hearing, a defendant must make a timely and specific challenge.[5]

Defendant Leo Garza did not challenge any of the information contained in the presentence report; nor did he request an evidentiary hearing at which he could controvert information contained in the report. The victim was present at the time of sentencing and could have testified had facts contained in the presentence report been appropriately

---

[5]*See State v. Mail*, 121 Wn.2d 707, 712, 854 P.2d 1042 (1993); *State v. Handley*, 115 Wn.2d 275, 282-83, 796 P.2d 1266 (1990).

challenged or an evidentiary hearing requested. Leo Garza's sister and codefendant, Gloria Garza, had received an exceptional sentence based on the same facts and a similar plea just 2 weeks earlier, so his own exceptional sentence can hardly have come as a surprise to him.

By failing to object to the information contained in the presentence report or to demand an evidentiary hearing to refute that information, this Defendant acknowledged that he was unable to controvert the facts set forth in the report.

Under these circumstances, the sentencing court had a right to and did properly consider the information contained in the presentence report in determining Defendant Garza's sentence. Accordingly, the findings of fact entered by the sentencing court in support of Leo Garza's exceptional sentence are supported by the record, as are its conclusions of law. Because we hold Defendant Leo Garza's sentence to be supported by the record, we need not decide whether the sentence would be justified on other grounds.

Affirmed.

UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.