[No. 38422-8-I. Division One. August 25, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL ALLAN HALGREN, *Appellant*.

---

*Kelly V. Curtin, Mark Huth,* and *Nielsen, Broman & Associates, P.L.L.C.,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Howard Schneiderman, Deputy,* for respondent.

AGID, J. — Michael Halgren appeals the trial court's order imposing an exceptional sentence upwards, arguing that its future dangerousness finding was error because, according to Halgren, the offense was not sexual in nature. He also contends that the prosecutor violated an agreement to recommend a standard range sentence and that the trial court improperly considered psychological reports and evaluations on which the presentence report was based. We hold that the trial court properly considered the information provided, the offense was sexually motivated and the court may impose an exceptional sentence based on future dangerousness without the State's having charged the defendant under the sexual motivation sentence enhancement statute. We therefore affirm.

## FACTS

On September 29, 1995, Michael Halgren was charged with one count of kidnapping in the second degree with sexual motivation based on an incident three nights earlier. He picked up Pamela Townsel and negotiated with her to exchange money for sex. He then told her he was a police officer and tried to handcuff her while she was in his car. After Halgren drove past a parked police van, she became suspicious that he was not really a police officer. When Halgren turned into an alley, Townsel tried to open the door to jump from the car but Halgren pulled her away from the door and grinned. As he accelerated, Townsel again tried to open the door. This time she succeeded and fell from the moving car. Seattle Police Officer Ronald Giroux saw her fall from the car and took off after Halgren with his siren on and lights flashing. Halgren ran through several stop signs without slowing and stopped only when he was boxed in by a police van coming from the opposite direction. After being advised of his rights,

Halgren told officers he had picked up Townsel to exchange money for sex. When police searched Halgren's car, they found three sets of plastic flex cuffs, a screwdriver, and a roll of duct tape. Halgren is a registered sex offender and was convicted of first degree rape in 1989. He was released from prison on that charge in March 1995 and was still under supervision when this offense occurred just six months later.[1]

After entering into negotiations with the State regarding a possible plea bargain, Halgren appeared before the trial court on December 21, 1995. At that time, he told the court that he wanted to proceed with a stipulated facts trial, not a plea. In response to the court's inquiry, Halgren confirmed that he knowingly, voluntarily, intelligently and irrevocably waived his right to a jury trial. The trial court reviewed the information and police reports stipulated to by the parties and heard argument by counsel. Halgren argued that he was not guilty of unlawful imprisonment because he was unsuccessful in

---

[1]Halgren's 1989 conviction for first degree rape was based on an incident in which, after consuming alcohol, marijuana, and cocaine, he pulled a 54-year-old woman walking alone on the street into his van and raped her. Halgren was referred to Dr. Stuart Brown by his own attorney for a psychosexual evaluation in anticipation of the sentencing hearing. Dr. Brown is a certified sexual offender specialist. Halgren told Dr. Brown that he had started raping prostitutes as a teenager, using a knife or tying them up to force them to have sex with him while refusing to give them any money. He also said he had raped a 17-year-old friend of his sister's and two other women in Bellevue. Based on Halgren's account, Dr. Brown estimated that Halgren had committed approximately 25 rapes, most after consuming drugs or alcohol. Psychological tests indicated he has a borderline personality disorder, antisocial personality disorder, and very strong levels of arousal to rape videos and to power and anger rape scenarios generally. While in prison on the first degree rape charge, Halgren entered the Twin Rivers Treatment Program in 1991 but did not complete the program. Halgren was released on parole in April 1993 but placed under strict supervision and closely monitored by Dr. Brown, with whom he also began intensive individual and group treatment. In April 1994, Halgren was returned to prison for two months after he lied about using cocaine and was arrested for soliciting a prostitute in violation of the conditions of his parole. Halgren again violated the conditions of his parole by using cocaine and failing a surprise urinanalysis immediately after his second release. This time the parole board returned Halgren to prison to serve out the full length of his sentence. He had participated only briefly in the sexual deviancy and abuse treatment imposed as a condition of community placement.

restraining the victim. The trial court rejected his argument and found him guilty.

On February 14, 1996, the date set for sentencing, the prosecutor requested a brief continuance either to that Friday or the next to review the presentence report. He told the court that he and defense counsel had learned only the previous day that the Department of Corrections (DOC) intended to recommend an exceptional sentence upwards based on Dr. Brown's psychological reports and evaluations. Sentencing was continued to February 23. On February 21, the court granted a further delay at the defense request and continued sentencing to March 21. On March 20, defense counsel filed a memorandum challenging the evaluations on which the presentence report was based as inaccurate and arguing that the State was bound by an agreement to recommend a standard range sentence in exchange for a plea. The State contended that it was not bound by the agreement because it was premised on Halgren's agreeing to plead guilty to unlawful imprisonment. Based on the information contained in the psychological reports and evaluations of which it had been unaware before receiving the DOC report, the State decided to concur in DOC's recommendation that the court impose an exceptional sentence upwards. At the conclusion of the sentencing hearing on March 21, the court ruled that Halgren's offense was sexual in nature and imposed an exceptional sentence of 60 months.

## DISCUSSION

### I. Waiver of Jury Trial

Halgren first contends that he did not voluntarily waive his right to a jury trial. He does not dispute either that he signed a written waiver of jury trial or that the trial court properly complied with the procedural requirements for the waiver. But he argues that his waiver was based on his understanding that the sexual motivation allegation

would be stricken and that the State would recommend a standard range sentence of three months.[2]

█ It is true that the State changed its position about recommending a standard range sentence. Once Halgren chose not to enter a guilty plea, however, the State was not bound by any agreement made in the course of plea negotiations. While Halgren contends that he complied with his agreement when he stipulated to the facts, an agreement to stipulate to the facts is not analogous to a plea agreement. *See State v. Mierz*, 127 Wn.2d 460, 469, 901 P.2d 286 (1995). Rather,

> [a] guilty plea . . . is functionally and qualitatively different from a stipulation. A guilty plea generally waives the right to appeal. A guilty plea has been said to be "itself a conviction; nothing remains but to give judgment and determine punishment."
>
> A stipulation, on the other hand . . . is only an admission that if the State's witnesses were called, they would testify in accordance with the summary presented by the prosecutor. The trial court must make a determination of guilt or innocence. More importantly, a stipulation preserves legal issues for appeal and can operate to keep potentially prejudicial matters from the jury's consideration.

*State v. Johnson*, 104 Wn.2d 338, 341, 705 P.2d 773 (1985) (citations omitted).

Here, the prosecutor explained to the court that his decision to reduce the charge was based on his evaluation of the case, i.e., he believed that the charge of unlawful imprisonment conformed more closely to the evidence than did the original kidnapping charge. Defense counsel agreed with the prosecutor's characterization of the reason for the request. Although Halgren stipulated to the facts contained in the police reports, defense counsel argued vigorously that elements of the crime had not been met. Had that argument been successful, Halgren would simply have been acquitted.

---

[2]The sexual motivation allegation was stricken during plea negotiations and neither pleaded nor proved below.

532

■ When Halgren did not keep his part of the bargain by pleading guilty, he lost any right he may have had to require the State to recommend a standard range sentence of three months.[3] Halgren cannot sign a jury waiver, assure the court that he knowingly, intelligently, voluntarily and irrevocably waived his right to a jury on the record, and then rely on an agreement with which he did not comply to claim that that waiver was not voluntary.

## II. Psychological Evaluations

■ Halgren next contends that the trial court erred in considering the psychological reports and evaluations on which the DOC presentence report was based. CrR 7.1(c) provides that in order to dispute information contained in a presentence report, defense counsel must notify opposing counsel and the court at least three days before the sentencing hearing that the defense will produce evidence to controvert the report. Although Halgren filed a memorandum objecting to the admissibility of those reports and evaluations below, he did not do it within the time required by CrR 7.1(c). He also failed to indicate that he would controvert any of the information contained in the reports which he alleged was inaccurate. *See State v. Garza*, 123 Wn.2d 885, 890, 872 P.2d 1087 (1994) (to dispute any of the information presented for consideration at a sentencing hearing, a defendant must make a timely and specific challenge). Halgren was present at the sentencing hearing and did not object to the testimony of either Dr. Brown or Kathleen Dockerty, the presentence writer, both of whom based their testimony in substantial part on the information in those reports. He also did not request an evidentiary hearing to controvert information contained

---

[3]While the prosecutor did at one point make the statement that "we have a plea agreement with the defendant, I'm honor-bound by that plea agreement," once the defendant failed to enter a plea, the State was no longer bound. The fact that the prosecutor may have been momentarily confused about what had happened at the previous hearing does not change that result.

in the reports,[4] choosing instead to challenge Dr. Brown's professional qualifications and expertise. Under the circumstances, the trial court properly concluded that Halgren acknowledged the information contained in the presentence report and its supporting documents. *Garza*, 123 Wn.2d at 891 (acknowledgment includes failing to timely object to information contained in a presentence report or to demand an evidentiary hearing to refute that information). The court therefore properly considered them.

### III. Exceptional Sentence

■ Halgren contends that the trial court erred when it imposed an exceptional sentence upwards based on its finding of future dangerousness. A trial court may impose an exceptional sentence based on a finding of future dangerousness if the offense is sexual, the defendant has a history of similar criminal acts, and the defendant is not likely to be amenable to treatment. *State v. Strauss*, 119 Wn.2d 401, 414, 832 P.2d 78 (1992). In *State v. Barnes*, 117 Wn.2d 701, 711-12, 818 P.2d 1088 (1991), the Supreme Court held that a finding of future dangerousness may not support an exceptional sentence where the underlying offense is nonsexual in nature.

---

[4]Halgren's contention that he informed the court that he had an additional witness whom he did not have a chance to contact so that she could be present is a subtle but significant misrepresentation of the record. What Halgren actually said was:

> I was looking for a new therapist. I even had talked to Steven McNickolls, my CCO, . . . and I had an appointment to go to a new therapist. And I wish I would have contacted her and had her come in 'cause that would have been a lot better for me if I did.

Halgren, in other words, did not state that he actually had another witness available whom he had not had a chance to contact, but only that he had an appointment with a new therapist whom he wished he had contacted. This does not amount to a request for an evidentiary hearing, nor does it amount to an assertion that he had evidence to offer that would have controverted Dr. Brown's testimony.

Halgren's contention that his attorney objected to the presentence report at the time it was offered is also false. While defense counsel objected to the imposition of an exceptional sentence on the ground that the request was untimely and lacked "any legal basis or any legal merit," she did not object to the presentence report.

██ In *State v. Stewart*, 72 Wn. App. 885, 895, 866 P.2d 677 (1994), we observed that *Barnes* does not compel the conclusion that future dangerousness applies only to those offenses defined as sex offenses in the Sentencing Reform Act (SRA). We noted that *Barnes* in fact suggests the contrary and held that a court is not restricted to the SRA's definition of sex offense in determining whether an offense is sexual so that future dangerousness may be considered as an aggravating factor. Instead, a court should look at the defendant's acts in committing the crime and, from a commonsense perspective, determine whether the offense is in substance a sexual one. *Stewart*, 72 Wn. App. at 895. The Supreme Court affirmed on other grounds, expressly declining to decide this issue. In dicta, however, it rejected Stewart's argument that the Legislature intended that sexually motivated offenses be treated like nonsex offenses for purposes of considering future dangerousness. In addition, the Supreme Court agreed with this court that neither *Barnes* nor any of its progeny has given any indication that a trial court must limit itself to what the SRA defines as a sex offense.[5] *State v. Stewart*, 125 Wn.2d 893, 900, 890 P.2d 457 (1995).

██ In a variation on this theme, Halgren argues that the Legislature intended to make a finding of sexual motivation under RCW 9.94A.127 a prerequisite to imposing an exceptional sentence based on future dangerousness when it added sexual motivation to the nonexclusive list of aggravating factors in RCW 9.94A.390(f). *See In re Personal Restraint of Rama*, 73 Wn. App. 503, 507 n.4, 869 P.2d 1122 (1994) (*Stewart* is limited to prosecutions that predate July 1, 1990, the date the sexual motivation statute, RCW 9.94A.127, went into effect). We disagree. To impose such a requirement would mean that prosecutors would somehow have to uncover all the information they

---

[5]For this reason, we reject the analysis in *State v. Hicks*, 77 Wn. App. 1, 6, 888 P.2d 1235 (1995) (even though the crime of which the defendant was convicted was manifestly sexual in nature, it was not a sex offense under the SRA and, therefore, the trial court erred when it relied on future dangerousness to impose an exceptional sentence upwards).

learn in the presentence report at the time the charging decision is made, rather than waiting until a defendant pleads guilty or is convicted. Because evidence of prior treatment or admissions made in the course of treatment is neither relevant nor admissible at trial, the criminal justice system has no way of assuring that the prosecutor will have access to that information before the trial begins. This case illustrates the problem that would arise: because the State was not then aware of Halgren's pattern and extensive history of sexually assaultive behavior he disclosed to Dr. Brown, it agreed to drop the sexual motivation allegation at the time it was negotiating a plea with him. To require the State to learn this information at the charging or plea stage in order to make sure it filed a sexual motivation enhancement charge as a prerequisite to requesting an exceptional sentence would frustrate the Legislature's purpose in permitting exceptional sentences. If the Legislature had intended to limit the power of the courts to impose exceptional sentences, it could easily have said that a statutory sexual motivation finding was in fact a prerequisite to imposing an exceptional sentence based on future dangerousness. But even when it amended the statute to add statutory sexual motivation to the non-exclusive list of aggravating circumstances, it did not do so. We will not presume that the Legislature intended to amend the exceptional sentence provisions of the SRA sub silentio. *See State v. Calderon*, 102 Wn.2d 348, 351, 684 P.2d 1293 (1984) (we will not assume that the Legislature would effect a significant change in legislative policy by mere implication). For these reasons, we conclude that the commonsense approach articulated in *Stewart* is not limited to cases that predate the Legislature's addition of sexual motivation to the list of aggravating factors in RCW 9.94A.390.

■ The trial court found that the crime here was sexual in nature because it was motivated by the sexual gratification and desire of the defendant. This finding is supported by substantial evidence in the record. *Garza*, 123 Wn.2d at

889 (a trial court's reasons for imposing an exceptional sentence will be upheld on appeal if they are supported by substantial evidence). First, both Halgren and Townsel told police that he picked her up for sex. Second, Dr. Brown testified at length about Halgren's pattern of sexually assaultive behavior, which involved an escalating cycle of substance abuse and picking up and assaulting prostitutes. As the trial court noted, the fact pattern here dovetails almost perfectly with the sexual deviancy pattern Dr. Brown described. Based on this evidence, the trial court's finding that the crime was sexual in nature was not clearly erroneous.

The trial court's findings that Halgren has a history of sexually assaultive behavior and that he is not amenable to treatment are also not clearly erroneous. In addition to his prior conviction for first degree rape, Halgren admitted to Dr. Brown that he had raped approximately 25 women in connection with abusing drugs and alcohol. Dr. Brown testified that Halgren had undergone two courses of treatment, neither of which he completed. He also testified that Halgren presents such a high risk that, in his view, it is virtually certain that Halgren will reoffend. Ms. Dockerty likewise testified that Halgren was not amenable to treatment; she too believed that it was very likely Halgren would reoffend. This offense, Halgren's prior arrest for soliciting a prostitute, and his use of cocaine while on parole all support their testimony that his particular pattern of sexually assaultive behavior has not been broken. Given Halgren's failure to seek a ruling on the admissibility of the psychological reports and his admission that he committed this crime for sexual purposes, there is no basis for concluding that the State did not prove sexual motivation beyond a reasonable doubt.

 ██ Halgren also contends that the length of his sentence was clearly excessive. For a sentence to be clearly excessive, it must be shown to be clearly unreasonable, i.e., exercised on untenable grounds or for untenable reasons, or an action that no reasonable person would

have taken. *State v. Ritchie*, 126 Wn.2d 388, 395-96, 894 P.2d 1308 (1995); *State v. Oxborrow*, 106 Wn.2d 525, 531, 723 P.2d 1123 (1986). Halgren argues that even if a sexual motivation allegation had been pleaded and proven, the standard range would have been only 15 to 20 months.[6] For that reason, he argues, the sentence was clearly excessive. But a finding of future dangerousness is not the same as a sexual motivation allegation. If anything, proving future dangerousness is more difficult than proving sexual motivation alone because the State must show not only that the current offense is sexual in nature but must also demonstrate both a pattern of sexually assaultive behavior and that the defendant is not amenable to treatment. Because a finding of future dangerousness is not equivalent to a finding of sexual motivation, the fact that the length of the sentence was three times that which could have been imposed had a sexual motivation allegation been pleaded and proven does not mean that it was clearly excessive. *Ritchie*, 126 Wn.2d at 395-96; *State v. Ross*, 71 Wn. App. 556, 571-72, 861 P.2d 473, 883 P.2d 329 (1993), *review denied*, 123 Wn.2d 1019 (1994).

## IV. Speedy Sentencing

Finally, Halgren contends the court violated his right to speedy sentencing. He concedes that the length of the delay was minimal and "not a factor," but argues that the reason for the delay was improper and he was prejudiced because it gave the State an opportunity to prepare and submit its sentencing information which led in turn to the court's determining that the offense was sexual. The constitutional right to a speedy trial encompasses the right to speedy sentencing. *State v. Ellis*, 76 Wn. App. 391, 394, 884 P.2d 1360 (1994). A sentencing hearing should be held within 40 court days following conviction. RCW 9.94A.110. However, a court may extend that time on a showing of good cause. RCW 9.94A.110. A

---

[6]The parties agree that, had a sexual motivation allegation been pleaded and proven, it would have added three points to the standard range.

538

purposeful or oppressive delay, on the other hand, violates speedy sentencing rights. *Ellis*, 76 Wn. App. at 394.

Here, there is no basis for concluding that the court violated Halgren's right to speedy sentencing. First, counsel explained to the court that neither the State nor the defense had had a chance to review the DOC recommendation and presentence report because they had both received it for the first time only the day before. The court granted the continuance to allow both counsel time to review the report to assure that the court was fully and properly advised at the time it imposed sentence. Second, Halgren himself concedes the delay was minimal. Third, Halgren's own brief submitted in opposition to the State's assertion that it would concur in the DOC recommendation expressly states the continuance from February 23 to March 21 was requested by the defense. Halgren's right to speedy sentencing was not compromised by the continuances granted by the court.

Affirmed.

COLEMAN and GROSSE, JJ., concur.

Reconsideration denied October 10, 1997.

Review granted at 134 Wn.2d 1024 (1998).