971 P.2d 512 (1999)
137 Wash.2d 340
STATE of Washington, Respondent,
v.
Michael A. HALGREN, Petitioner.
No. 66231-2.
Supreme Court of Washington, En Banc.
Argued September 22, 1998.
Decided February 11, 1999.
*513 James R. Dixon, Nielsen, Broman & Associates, Kelly Curtin, Seattle, for Petitioner.
Norm Maleng, King County Prosecutor, Howard Schneiderman, David L. Ryan, Deputy King County Prosecutors, Seattle, for Respondent.
MADSEN, J.
Petitioner, who was convicted of unlawful imprisonment, contends that an exceptional sentence based upon the aggravating factor of future dangerousness cannot be imposed unless the conviction is for a sex offense as specifically defined in the Sentencing Reform Act of 1981(SRA). RCW 9.94A. We agree, and reverse the decision of the Court of Appeals.

FACTS
Just after midnight on September 27, 1995, defendant Michael Halgren approached Pamela Townsel, a prostitute, in downtown Seattle. He indicated she should get into his car, which she did, and identified himself as "Al." They agreed to sex for money. At that point Halgren told Townsel he was a police officer and told her to put her hands out so he could handcuff her (using plastic handcuffs). Townsel refused and asked to see his badge. Halgren said he would take her to his partner.
They passed a police van, and instead of stopping his car Halgren speeded up. When Townsel asked why Halgren did not stop, he smiled strangely, which terrified Townsel. Halgren approached an alley and turned his car very fast. Townsel opened the door to jump out, but Halgren grabbed her and told her "Oh no. You can't get away." Clerk's Papers (CP) at 37. Townsel nevertheless managed to get out of the car and fell to the ground as the car was still moving, suffering injuries. As she fell, she saw a police car and yelled at the officer to follow Halgren's car and arrest him. The officer pursued Halgren, who eventually pulled over and was arrested.
Following his arrest, Halgren waived his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966). He claimed that he had told Townsel that he was driving to a cash machine to get money, but she "freaked out" and told him to drop her off. He said he tried to calm her down and tried to keep her from getting hurt but he could not hold her.
When Halgren's car was searched a white plastic cuff and screwdriver were found on the driver's floor; two white plastic flex cuffs and a roll of duct tape were found behind the driver's seat. Halgren was not a law enforcement officer.
Halgren was originally charged with kidnapping in the second degree alleged to have been committed with sexual motivation. On December 21, 1995, the State filed an amended information changing the charge to unlawful imprisonment and eliminating the sexual motivation allegation. Although plea negotiations occurred, Halgren ultimately decided not to plead guilty and instead requested a stipulated facts trial based upon police reports. He argued at trial that the evidence was insufficient for a conviction of unlawful imprisonment, but instead supported at most a conviction for attempted unlawful imprisonment. The trial court found Halgren guilty of unlawful imprisonment.
The day before Halgren's sentencing hearing, his attorney and the prosecuting attorney both learned for the first time that the community corrections officer who prepared the presentence report would recommend an exceptional sentence upward. That recommendation was largely based upon psychological reports and evaluations of Halgren by *514 Dr. Stuart Brown, a Washington certified sexual deviancy treatment provider, who had evaluated Halgren when Halgren was convicted in 1989 of first degree rape. Dr. Brown's reports describe Halgren's failure to complete treatment programs. Halgren did not complete the Twin Rivers Treatment Program while incarcerated on the 1989 rape conviction. Upon his release in 1993, while under Dr. Brown's supervision and treatment, he used cocaine and solicited a prostitute in violation of conditions of his parole and was returned to prison. He was again released in 1994, and again was returned to prison after violating conditions of his parole. Halgren had participated for only a short time in a sexual deviancy and abuse program imposed as a condition of community placement. His present crime was committed six months after he was released after serving the full length of his sentence on the 1989 rape conviction.
Dr. Brown testified at Halgren's sentencing hearing that Halgren is not amenable to treatment. The State joined the Department of Corrections' recommendation that an exceptional sentence be imposed.
The trial court sentenced Halgren to an exceptional sentence of 60 months based upon the nonstatutory aggravating factor of future dangerousness. The standard range sentence is 3-8 months. The court found that in looking at the facts from a common sense perspective, Halgren's actions constituted a sexual offense, although unlawful imprisonment is not defined as a sex offense in the Sentencing Reform Act of 1981; that he has a history of similar criminal actsthe 1989 rape which the court found was factually similar to the current offense, the 1994 arrest for patronizing a prostitute, and the history of assaultive behavior he gave Dr. Brown; and that he is not amenable to treatment as shown by failed attempts at treatment, violations of his treatment and parole (including soliciting a prostitute within three days of a group therapy session), and Dr. Brown's testimony that Halgren is not amenable to treatment. The court found the aggravating factor of future dangerousness, and accordingly imposed an exceptional sentence.[1]
Halgren appealed, raising several issues.[2] The Court of Appeals affirmed. State v. Halgren, 87 Wash.App. 525, 942 P.2d 1027 (1997), review granted, 134 Wash.2d 1024, 958 P.2d 314 (1998). Halgren petitioned for discretionary review on only one issue, the use of future dangerousness as an aggravating factor.

ANALYSIS
In order to impose an exceptional sentence the sentencing court must find substantial and compelling reasons set forth in written findings and conclusions which support imposition of an exceptional sentence. RCW 9.94A.120(2). Upon review, an appellate *515 court may be asked to decide (1) whether there is sufficient evidence in the record to support the reasons for imposing an exceptional sentence under a clearly erroneous standard, (2) whether as a matter of law the reasons justify an exceptional sentence, and (3) whether an exceptional sentence is clearly excessive under an abuse of discretion standard. RCW 9.94A.210(4); State v. Nordby, 106 Wash.2d 514, 723 P.2d 1117 (1986). Here, the only issue involves the second inquiry, whether as a matter of law the reason given for Halgren's exceptional sentence justifies an exceptional sentence.
Future dangerousness is a nonstatutory aggravating factor which may support an exceptional sentence in a sexual offense case. State v. Strauss, 119 Wash.2d 401, 414, 832 P.2d 78 (1992); State v. Pryor, 115 Wash.2d 445, 799 P.2d 244 (1990). To impose an exceptional sentence in a sexual offense case, two conditions must be satisfied: "(1) the defendant has a history of similar criminal acts; and (2) the defendant is not likely to be amenable to treatment." Strauss, 119 Wash.2d at 414, 832 P.2d 78; Pryor, 115 Wash.2d at 453-55, 799 P.2d 244. Future dangerousness may not, however, be relied upon to impose an exceptional sentence in nonsexual offense cases. State v. Barnes, 117 Wash.2d 701, 818 P.2d 1088 (1991).
Halgren contends that if an offense is not a sex offense as defined in the SRA the future dangerousness factor cannot be applied.[3] The issue here is thus what constitutes a sex offense for purposes of the future dangerousness factor. In considering this question, we are mindful that although the future dangerousness factor is a nonstatutory factor, its scope is determined by the SRA. Thus, when deciding in Barnes that the future dangerousness factor does not apply to nonsexual offenses, both the lead and concurring opinions focused on distinctions drawn by the SRA, as well as policies underlying the act. For instance, the lead opinion explained that the court's formulation of the future dangerousness factor was based upon the Legislature's differing treatment of sexual offenses:
At the time the SRA was enacted, the Superior Court Judges Association recommended sex offenders be treated differently from other offenders due to their belief that a sex offender's behavior was compulsive and likely to continue without treatment. See [David] Boerner, [SENTENCING IN WASHINGTON,] at 8-2 [1985]. The options created for sexual offenders were authorized "because it was believed that for these groups of offenders, requiring participation in rehabilitation programs is likely to prove effective in preventing future criminality." D. Boerner, at 2-37.
Barnes, 117 Wash.2d at 708, 818 P.2d 1088. The lead opinion also observed, among other things, that judicial authority to impose treatment as part of a sentence, other than for sexual and first time offenders, did not exist under the SRA. Id. at 710, 818 P.2d 1088. Both the lead and concurring opinions expressed concern about the level of discretion accorded the sentencing judge for nonsexual offenses. The lead opinion concluded that extension of the future dangerousness factor to nonsexual offense cases would violate purposes of sentence reform, disrupt the SRA's proportionality policy, and grant "too broad a grant of discretion to the sentencing judge, which discretion the Legislature intended to limit." Id. at 711-12, 818 P.2d 1088. The concurrence stated that it would be improper to impose on trial courts a duty of resolving conflicting testimony on the issue of future dangerousness without a grounding in the SRA for such authority and its exercise. Id. at 713-14, 818 P.2d 1088 (Guy, J., concurring in the result).
As in Barnes, we turn to the SRA to determine the scope of the future dangerousness factor. Prior to the enactment of the Community Protection Act of 1990 (Laws of 1990, ch. 3), sex offenses defined in the SRA included what might be called sex offenses in a conventional sense, such as rape and incest: felony violations of RCW 9A.44 (sec offenses), 9A.64.020 (incest), or RCW 9.68A.040 *516 (sexual exploitation of children), or criminal attempts, criminal solicitation, or criminal conspiracy to commit such crimes were the sex offenses defined in the SRA. See RCW 9.94A.030(33)(a).[4] Under the Community Protection Act, the Legislature expanded the definition of sex offenses to include other crimes where there is a finding of sexual motivation. See RCW 9.94A.030(33)(b). A finding of sexual motivation will occur only where the State files a special allegation of sexual motivation and proves the allegation beyond a reasonable doubt, and the court or the jury in a jury trial finds that the defendant committed the crime with a sexual motivation. See RCW 9.94A.127. Sexual motivation is defined as meaning that "one of the purposes for which the defendant committed the crime was for the purpose of his or sexual gratification." RCW 9.94A.030(34). If a finding of sexual motivation is made, an exceptional sentence upward may be imposed pursuant to RCW 9.94A.390(2)(f).
In defining sex offenses to include crimes committed with sexual motivation, the Legislature in 1990 recognized the valid premise that an offense could factually be a sexually based crime without being a specifically defined sex offense like rape or incest. We have noted this legislative determination. In referring to the juvenile counterpart to RCW 9.94A.030(33)(b), this court stated that "[t]he sexual motivation statute is directed at the action or conduct of committing a crime because of the defendant's desire for sexual gratification." State v. Halstien, 122 Wash.2d 109, 123, 857 P.2d 270 (1993). The statute punishes the defendant for acting on sexual thoughts in a criminal manner. Id.
The Court of Appeals similarly reasoned in some decisions to which the Community Protection Act of 1990 did not apply that offenses could factually be sexual in nature despite not falling within the pre-1990 definition of sex offenses in the SRA. In State v. Stewart, 72 Wash.App. 885, 895, 866 P.2d 677, review granted, 124 Wash.2d 1008, 879 P.2d 293 (1994), the Court of Appeals said that
for purposes of determining whether an offense is a sexual offense and whether future dangerousness may be considered as an aggravating factor, a court is not restricted to the SRA's definition of sex offense. Rather, for these purposes, the court should look at the defendant's acts in committing the crime and determine, from a common sense perspective, whether the offense is capable of treatment as a sexual offense. If it is, future dangerousness may be considered as an aggravating factor.
The Court of Appeals in this case adhered to this holding, and concluded that the record supported the trial court's determination that the crime here was sexual in nature.
However, regardless of the merits of the "common sense perspective" approach, the Legislature has now both defined what are factually sex offenses and directed how the determination is to be made. Recognizing this change, in In re Personal Restraint Petition of Rama, 73 Wash.App. 503, 869 P.2d 1122 (1994), Division One relied upon the common sense perspective analysis of Stewart but said that "[o]ur holding, like that of Stewart, is necessarily limited to prosecutions that preceded July 1, 1990, the date the sexual motivation statute, RCW 9.94A.127, went into effect." Rama, 73 Wash.App. at 507 n. 4, 869 P.2d 1122;[5]see also State v. Hicks, 77 Wash.App. 1, 888 P.2d 1235 (1995) (future dangerousness factor may be applied only where defendant is being sentenced for a sex offense as defined in the SRA); cf. Pryor, 115 Wash.2d at 449, 799 P.2d 244 (suggesting that passage of the Community Protection Act of 1990 would affect the way the future dangerousness factor would be applied in the future).
We agree with Halgren that there is no longer room for the argument that a judicial determination may be made that factually a crime is a sex offense even if not defined as such in the SRA. As the SRA directs, where a crime is not specifically identified as a sex offense, like rape or incest, the determination *517 that a crime is a sex offense may be made only after the prosecution alleges and proves sexual motivation beyond a reasonable doubt, and the court or the jury makes a finding of sexual motivation. RCW 9.94A.127. The Legislature has thus provided the guidelines for the determination of whether an offense is factually a sex offense.
As noted, a majority of this court in Barnes noted that the nonstatutory factor should not be applied in nonsexual offenses because to do so would expand the discretion of the sentencing judge in a way not contemplated by the SRA. The same problem arises if the factor is applied in cases like the present one, where the crime charged and proved by the State is not a sexual offense as defined in the SRA. In such cases, the sentencing judge would have to decide whether the crime is sufficiently sexually motivated as part of the judge's exercise of discretion in deciding whether to impose an exceptional sentence. Given the specific requirements for a sexual motivation finding, such a decision is beyond the discretion afforded the sentencing judge under the SRA.
Specific legislative requirements would be thwarted in other ways if the future dangerousness factor could be applied without regard to the Legislature's specific definition of sex offenses in the SRA. A prosecutor could decide not to allege sexual motivation, which requires proof beyond a reasonable doubt, and then seek an exceptional sentence arguing that the offense was, in fact, sexually motivated. Allowing what is essentially a sexual motivation allegation to be made and found at sentencing is inconsistent with the SRA's requirement that the prosecutor file a special allegation of sexual motivation. A concomitant problem is that as a result, some defendants committing offenses sexual in nature would receive an exceptional sentence based only on matters proved beyond a reasonable doubt, while others would suffer such consequences without that burden of proof on the State.
We additionally note that sentencing provisions and options for sex offenders under the SRA differ from those in the case of a nonsexual offense. The finding of sexual motivation "trigger[s] the same consequences as any other sex offense, such as higher offender points for subsequent sex offenses, civil commitment, and eligibility or ineligibility for SSOSA or SSODA." Final Legislative Report, 52d Leg. Sess. 143 (Wash.1990). The Court of Appeals decision in this case dispenses with that differing treatment for a current nonsexual offense (as defined by the SRA), while still allowing the offense to be treated as a sexual offense for purposes of an exceptional sentence.
We next comment on a matter raised by the Court of Appeals. That court rejected what it said was Halgren's argument that a finding of sexual motivation under RCW 9.94A.127 is now a prerequisite to an exceptional sentence based upon future dangerousness. Halgren, 87 Wash.App. at 534-35, 942 P.2d 1027. The court reasoned that such a requirement would mean that prosecutors would have to determine all the information learned in the presentence report at the time the charging decision is made. Id. The court said that because evidence of prior treatment is not relevant or admissible at trial, the criminal justice system would have no way of assuring that information would be available before trial. Id. at 535, 942 P.2d 1027. However, this does not seem to be Halgren's argument, nor does it make sense. The statutory aggravating factor based upon sexual motivation does not require, as does the nonstatutory future dangerousness factor, prior similar history and lack of amenability to treatment. Instead the sexual nature of the current offense is the relevant inquiry. Accordingly, accepting Halgren's argument does not mean that the prosecution would be put in the position of not having sufficient information about prior treatment or prior history for making the charging decision whether to allege sexual motivation, because neither is relevant to the sexual motivation determination.
Nor is the need for a sexual motivation allegation unduly burdensome to the State. Here, for example, the State in fact originally charged Halgren with kidnapping in the second degree alleged to have been committed with sexual motivation. The State then dropped the sexual motivation allegation. Having made that decision, the State is not *518 entitled to seek an exceptional sentence based upon the sexual nature of the crime.

CONCLUSION
The scope of the future dangerousness aggravating factor for purposes of an exceptional sentence under the SRA is resolved in light of express provisions in the SRA as well as its policies and goals. The SRA prescribes how a determination is to be made that an offense is a sex offense. The Legislature's guidelines for deciding when a crime is factually a sex offense even if not a specified sex offense such as rape or incest preclude application of the future dangerousness factor where a crime does not fall within the SRA's definition of a sex offense.
We reverse the Court of Appeals decision and remand for resentencing.
SMITH, JOHNSON, ALEXANDER and SANDERS, JJ., concur.
TALMADGE, J., dissenting.
Michael Halgren has a history of sexual offenses. He has committed 24 rapes by his own admission and he has been described as a "time bomb" likely to reoffend in the future. Because of a technical reading of the crime Halgren committed in this case, the majority determines his crime is not a sex offense which would permit the trial court to consider Halgren's future dangerousness in imposing an exceptional sentence. Although our previous cases have indicated we are not constrained by the legislative definition of a sexual offense in the Sentencing Reform Act of 1981(SRA) in affirming an exceptional sentence based on the future dangerousness of a sex offender, the majority now disregards our prior pronouncements on the issue and holds the trial court cannot consider Halgren's future dangerousness for imposing an exceptional sentence. I disagree and therefore respectfully dissent.
The facts of Halgren's present crime only confirm he was involved in a sexually motivated crime. Halgren approached a prostitute in downtown Seattle and agreed to pay for a sex act. She accompanied Halgren in his car. He then claimed he was a police officer and tried to handcuff her. Realizing that he was dangerous, the woman jumped out of the car, screaming for the police. After a dangerous high speed chase, Halgren was finally captured by Seattle police officers. The officers found plastic flex cuffs, duct tape, and a screwdriver in the car. Halgren was found guilty of unlawful imprisonment.
Halgren has a long history of sexual deviancy and violent conduct. He exposed himself frequently. He raped at least 24 women. He often broke into victims' homes. He has a pattern of raping prostitutes, at knifepoint. He has been diagnosed as having a borderline personality disorder, an antisocial personality disorder and very strong levels of arousal to rape videos and power and anger rape representations. One therapist described Halgren as a "predatory offender," Clerk's Papers at 107, and another therapist described him as "a `time bomb' waiting to go off," "out of control and ... a clear and cogent danger to the community." Clerk's Papers at 117.
Halgren was previously convicted of rape in the first degree in 1989 and treated in the sexual offender treatment program at Monroe, but failed to complete that program, dropping out after 16 months of treatment, because he did not like his therapist. He was evaluated as not amenable to treatment and terminated from the program.
Notwithstanding the fact that Halgren's conviction for unlawful imprisonment is not among the offenses described as a "sex offense" in the definitional section of the SRA, RCW 9.94A.030(33), the trial court found that Halgren would be dangerous in the future and merited an exceptional sentence pursuant to State v. Barnes, 117 Wash.2d 701, 818 P.2d 1088 (1991). Id. at 703, 818 P.2d 1088 (citing State v. Pryor, 115 Wash.2d 445, 799 P.2d 244 (1990), noting future dangerousness may be considered as an aggravating factor justifying an exceptional sentence in sexual offense cases). The Court of Appeals affirmed the trial court's imposition of an exceptional sentence in State v. Halgren, 87 Wash.App. 525, 942 P.2d 1027 (1997).
*519 A defendant's future dangerousness is a valid aggravating factor if a defendant's present conviction is for a sex offense and there is evidence of prior similar criminal acts and of a defendant's unamenability to treatment. State v. McNallie, 123 Wash.2d 585, 590-92, 870 P.2d 295 (1994); Barnes, 117 Wash.2d at 703, 710-12, 818 P.2d 1088; State v. Strauss, 119 Wash.2d 401, 420-21, 832 P.2d 78 (1992); In re Personal Restraint Petition of Vandervlugt, 120 Wash.2d 427, 433, 842 P.2d 950 (1992). The aggravating factor of future dangerousness, however, has been confined to sexual offenses only. Vandervlugt, 120 Wash.2d at 433-34, 842 P.2d 950; Barnes, 117 Wash.2d at 703, 818 P.2d 1088; see also id. at 713, 818 P.2d 1088 (Guy, J., concurring). The only question in Halgren's case is whether the offense for which he was convicted amounted to a sex offense under the circumstances of this case.
From a purely practical perspective, Halgren's crime here was sexually motivated. Were we to conclude otherwise would require us to be oblivious to the circumstances of the crime and Halgren's pattern of deviancy. He picked up a prostitute, as he had done in the past. The paraphernalia in his vehicle suggested his ultimate intention. It defies common sense to suggest that Halgren, a predatory offender, was not involved in a sexually motivated crime.
In the past, we have not been constrained in our determination the offender committed a sex offense for purposes of an enhanced sentence by the SRA definition of sex offense. In State v. Stewart, 72 Wash.App. 885, 895, 866 P.2d 677 (1994), the Court of Appeals indicated trial courts should determine from a "common sense perspective" whether the offense is capable of treatment as a sex offense. If it is, then it is an offense for which future dangerousness may be considered as an aggravating factor. We affirmed the Court of Appeals in State v. Stewart, 125 Wash.2d 893, 890 P.2d 457 (1995). Therein, we approved the Court of Appeals' common sense approach, rejecting the defendant's contention that the trial court improperly considered his future dangerousness because he did not commit a "sex offense" as defined in the SRA. We noted:
This argument is not sustainable for two reasons. First, neither in Barnes nor in its progeny has this court given any indication that a trial court must refer to the SRA's definition of "sex offense" when determining whether or not an offender's future dangerousness can be considered. Second, even assuming arguendo that a court must refer to the SRA's definition of "sex offense", the Legislature could not have intended for a sexually motivated crime to be treated like a nonsex offense in order to determine whether or not an offender's future dangerousness can be considered.
Id. at 900, 890 P.2d 457. The Court of Appeals determined here that it should follow Stewart in affirming the imposition of an exceptional sentence for Halgren.
Division Three of the Court of Appeals, however, in State v. Hicks, 77 Wash.App. 1, 6-7, 888 P.2d 1235 (1995), indicated that the trial court's consideration of future dangerousness was inappropriate as a matter of law because the crime for which Mr. Hicks was convicted, although manifestly sexual in nature, was not included in the enumeration of sex offenses in the SRA. Discretionary review was not sought before this Court in Hicks and that Court of Appeals decision predates our discussion of the topic in Stewart. Although in Stewart, we held other grounds sufficient for resolution of that case, the view expressed therein, that the SRA enumeration of sex offenses is nonexclusive, was clearly the view of the majority of the Court and should be supported now. Cf. id. at 899-900, 890 P.2d 457 (majority opinion) and id. at 900-01, 890 P.2d 457 (three justices concurring/dissenting).
The majority here agrees with the Hicks court analysis of sexual offenses, impliedly rejecting the majority view expressed in Stewart and suggesting that by remaining silent since our decisions in Barnes and Stewart, the Legislature has acquiesced in the limited scope of cases to which the future dangerousness factor for an exceptional sentence applies.
Support for the majority's position cannot be derived from the language of the statute, nor from common sense. The SRA *520 definition of "sex offense" carries significant consequences besides an exceptional sentence. It is noteworthy that for a conviction of a sex offense, prior convictions for sex offenses count three points each in the offender's score. RCW 9.94A.360(16). Moreover, the definition of "sex offense" has significant implications for eligibility for alternative programs such as the Special Sex Offender Sentencing Alternative, see RCW 9.94A.120(8), and Special Sex Offender Disposition Alternative, see RCW 13.40.160(4), which focus on rehabilitation, treatment, and community placement for juveniles and other first time offenders where appropriate.
There is nothing in the Legislature's 1990 sex offender legislation or in subsequent amendments to the SRA, however, which would indicate the Legislature had an intent to restrict exceptional sentences to the SRA's definition of sex offenses. Specifically, RCW 9.94A.390 indicates the list of factors for exceptional sentences is "nonexclusive." Had the Legislature intended the interpretation the majority advances, it would have said its definition of sex offenses for purposes of determining whether a sex offender was dangerous in the future and therefore merited an exceptional sentence was confined to those crimes set forth in the SRA definition of a sex offense. It did not do so.
The facts in this case cry out for an application of common sense principles by this Court. The trial court and Court of Appeals were correct in their assessment that Michael Halgren is, and continues to be, a dangerous sex offender. He engages in violent sexual conduct, has one prior first degree rape conviction, is a registered sex offender, and has admitted to raping some 24 women. He has a particular penchant for abusing prostitutes, raping some at knifepoint, and has admitted the contact he initiated with the prostitute in the case before us was sexually motivated. He has undergone two courses of treatment, neither of which he completed. Expert testimony at trial also indicated he was not amenable to treatment and virtually certain to reoffend.
Clearly, Mr. Halgren is a predatory sex offender who will likely commit future similar offenses that are both violent and sexually motivated if he is not restrained.[1]
In Stewart, we applied a common sense understanding of a sexually motivated crime in rejecting the defendant's contention that future dangerousness could not be considered a sentence enhancement factor because his crime was not listed among the SRA's enumeration of sex offenses. Likewise, we should reject that same argument here and continue the policy enunciated in Stewart. We are not required to check our common sense or our sense of justice at the courthouse door. We should affirm the Court of Appeals and the trial court.
GUY, C.J., DURHAM, J., and DOLLIVER, J.P.T., concur.
NOTES
[1] The trial court also entered as a finding that the standard range sentence was clearly too lenient. Clerk's Papers (CP) at 62. This aggravating factor requires findings establishing either harm or culpability beyond that accounted for in the presumptive sentence. State v. Batista, 116 Wash.2d 777, 789, 808 P.2d 1141 (1991). The court did not enter such findings. However, the court also did not base the exceptional sentence on this factor, as the only conclusions of law concern the future dangerousness factor.
[2] Halgren argued he did not voluntarily waive his right to a jury trial, that the trial court erred in considering the psychological reports and evaluations upon which the Department of Corrections' presentence report was based, that future dangerousness could not be used to support an exceptional sentence, that the length of his sentence was clearly excessive, and that his right to speedy sentencing was violated. In regard to use of the psychological evaluations, there may be Fifth Amendment implications when admissions are made during treatment for sexual deviancy and then used for purposes of imposing an exceptional sentence. See generally State v. King, 130 Wash.2d 517, 925 P.2d 606 (1996). However, the Court of Appeals said that Halgren failed to timely object to admissibility of the reports and evaluations, failed to controvert any information he alleged was inaccurate, failed to object to the testimony of Dr. Brown and the presentence report writer at the sentencing hearing, and did not request an evidentiary hearing to controvert information in the reports. State v. Halgren, 87 Wash.App. 525, 532-33, 942 P.2d 1027 (1997), review granted, 134 Wash.2d 1024, 958 P.2d 314 (1998). The Court of Appeals held that the trial court properly considered the reports and evaluations. Id. at 533, 942 P.2d 1027. Halgren does not challenge this holding on discretionary review.
[3] This is an issue of first impression. Although this issue was raised in State v. Stewart, 125 Wash.2d 893, 890 P.2d 457 (1995), and this court made some comments concerning it, the comments are dicta as resolution of the case did not turn on the issue.
[4] RCW 9.94A.030(33)(c) also lists as sex offenses any federal or out-of-state convictions which would be sex offenses under subsection (a) under the laws of this state.
[5] Division One departed from Rama in this case.
[1] In a 1991 psychological evaluation, Psychologist Savio Chan described Halgren as a predatory offender tending toward sexual deviancy in the form of sexual sadism. Noting Halgren "has not profited from [treatment]", Chan concluded his report by rating Halgren's "re-offense" and "violent" risks as high. Clerk's Papers at 107.