273 P.3d 454 (2012)
STATE of Washington, Respondent,
v.
Tishawn Marqueis WINBORNE, Appellant.
No. 29711-0-III.
Court of Appeals of Washington, Division 3.
March 20, 2012.
*455 David L. Donnan, Lila Jane Silverstein, Marla Leslie Zink, Washington Appellate Project, Seattle, WA, for Appellant.
Mark Erik Lindsey, Andrew J. Metts III, Spokane County Prosecuting Attorneys, Spokane, WA, for Respondent.
SIDDOWAY, J.
¶ 1 Changes to the Sentencing Reform Act of 1981(SRA),[1] require that we revisit how sentencing courts address terms of community custody in entering an offender's judgment and sentence to ensure that the sentence does not exceed the statutory maximum for the crime. Amendments effective in 2009 no longer enable a sentencing court to make the form of judgment notation approved in In re Personal Restraint of Brooks, 166 Wash.2d 664, 675, 211 P.3d 1023 (2009)directing the Department of Corrections to release an offender from community custody before the date that would exceed the statutory maximumand thereby ensure the validity of a sentence that might otherwise be excessive.
¶ 2 In entering Tishawn Winborne's sentence, the trial court should have reduced the term of custody imposed as required by RCW 9.94A.701(9). We remand for resentencing.

BACKGROUND
¶ 3 Tishawn Winborne pleaded guilty in December 2010 to three felony counts of violating a domestic violence no-contact order under RCW 26.50.110(5). In light of his high offender score, the standard range sentence for each count was 60 months, the statutory maximum for the offense. As an offender sentenced for a crime against persons, he was required to be sentenced to a term of community custody in addition to a term of confinement. RCW 9.94A.701(1), .411(2).
¶ 4 In January 2011 the court sentenced Mr. Winborne to 60 months of confinement on each count and imposed a 12-month term of community custodycollectively 72 months, more than the statutory maximum. But in entering the judgment and sentence, the court made a notation directing the Department of Corrections (DOC) that "the total terms of confinement and community custody must not exceed the statutory maximum sentence of 60 months." Clerk's Papers at 40.
¶ 5 The use of this sort of notation had been common under prior law, which provided for a term of community custody that was variable in nature. Under former RCW 9.94A.715(1) (2008),[2] the term of community custody was either a range established by the sentencing guidelines commission under former RCW 9.94A.850 (2009)[3] or the period of earned early release awarded under former RCW 9.94A.728(1) and (2) (2008), whichever turned out to be longer. Because offenders could earn up to one-third of their sentence in early release credits during confinement (see former RCW 9.94A.728(1)(c)) a sentencing court that wanted an offender confined or under community custody for the maximum lawful time could accomplish that result only by imposing a sentence under which, if the offender earned early release from confinement, he or she would be transferred to community custody for the balance of the maximum sentence. It was impossible to know in advance how much early release time would be earned, so a sentencing court could ensure this maximum confinement/custody only by entering a judgment and sentence under which the two terms, combined, exceeded the statutory maximum, relying on DOC to release the offender once the maximum sentence had been served.
¶ 6 When challenged, this type of judgment and sentence met with mixed results in the Courts of Appeal. In State v. Sloan, 121 Wash.App. 220, 223, 87 P.3d 1214 (2004), Division One held that such a sentence did not exceed the statutory maximum, although it recognized that the sentence "may generate uncertainty in some circumstances." The court required that the sentencing court state explicitly on the judgment and sentence *456 "that the total [term] of incarceration and community custody cannot exceed the maximum." Id. at 224, 87 P.3d 1214. In State v. Hagler, 150 Wash.App. 196, 204, 208 P.3d 32, review denied, 167 Wash.2d 1007, 220 P.3d 209 (2009), however, a Division One panel concluded that such a sentence was indeterminate, in violation of the SRA.[4] Our division of the court found this type of sentence to be valid so long as the judgment and sentence set forth the statutory maximum and clearly indicated that the term of community custody did not extend the total sentence beyond that maximum. State v. Torngren, 147 Wash.App. 556, 566, 196 P.3d 742 (2008).
¶ 7 The Supreme Court resolved the issue in Brooks. It held that such a sentence did not exceed the statutory maximum where DOC "is required by the SRA to release the offender on or before the date the offender will have served the statutory maximum," 166 Wash.2d at 672, 211 P.3d 1023 (citing RCW 9.94A.505(5)) and the sentence "specifically directs the DOC to ensure that whatever release date it sets, under no circumstances may the offender serve more than the statutory maximum." Id. at 673, 211 P.3d 1023. It held that such a sentence was not indeterminate within the meaning of the SRA, which itself provided that "`[t]he fact that an offender through earned release can reduce the actual period of confinement shall not affect the classification of the sentence as a determinate sentence.'" Id. (quoting former RCW 9.94A.030(21) (LAWS OF 2008, ch. 276, § 309)). The court reasoned that if a sentence includes the required directive to DOC and has both a defined range and a determinate maximum, then it is as determinate as sentences ordinarily could be under the then-existing statutory scheme, under which "the exact amount of time to be served can almost never be determined when the sentence is imposed by the court." Id. at 674, 211 P.3d 1023. Given that, and the fact that the SRA itself gave the DOC the responsibility to set the amount of community custody to be served within that sentence, the court held that what we have come to call a Brooks-notated sentence was not indeterminate. Id.
¶ 8 When Brooks was decided on July 23, 2009, the legislature had already enacted changes to the SRA. Effective August 1, 2009, Laws of 2009, ch. 28, § 42(2) (Substitute S.B. 5190, "AN ACT Relating to technical corrections to ensure accurate sentences for offenders") had repealed RCW 9.94A.715, which had provided for a variable term of community custody. Effective July 26, 2009, Laws of 2009, ch. 375, § 5 (Engrossed Substitute S.B. 5288, "AN ACT Relating to the supervision of offenders")[5] had amended RCW 9.94A.701(1) to eliminate its reference to a variable term of community custody; in its place, the legislature added new language requiring sentencing courts to impose fixed terms of community custody of 36, 18, or 12 months, depending on the type of offense. RCW 9.94A.701(1)-(3). Most important here, it had added a new subsection (8) to RCW 9.94A.701 (later renumbered as subsection (9) by Laws of 2010, ch. 224, § 5), providing:
The term of community custody specified by this section shall be reduced by the court whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime as provided in RCW 9A.20.021.
¶ 9 The Supreme Court observed in Brooks that "[h]aving reviewed the upcoming amendments, it appears the legislature has addressed the very questions we are asked to answer in this case," 166 Wash.2d at 672 n. 4, 211 P.3d 1023, but it did not suggest how it believed the amendments resolved the questions. It addressed only the issues presented under then-existing law, "in order to resolve the conflict between the divisions of the Court of Appeals and to give guidance to *457 trial courts as they await the amendment to take effect." Id.
¶ 10 Mr. Winborne was sentenced for his crimes a year and a half after Brooks and the effective date of the 2009 amendments. The issue presented by his appeal is whether the Brooks notation on his judgment and sentence continues to suffice for its validity or whether, under current law, the sentencing court was required to set a definite, reduced term of community custody.

ANALYSIS
¶ 11 The interpretation of provisions of the SRA involves questions of law that we review de novo. State v. Jacobs, 154 Wash.2d 596, 600, 115 P.3d 281 (2005). When interpreting a statute, our objective is to determine the legislature's intent. Id. To determine that intent, we first look to the language of the statute. State v. Armendariz, 160 Wash.2d 106, 110, 156 P.3d 201 (2007). If the plain language of the statute is clear and unambiguous, we must give effect to the language as an expression of legislative intent. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9-10, 43 P.3d 4 (2002).
¶ 12 In determining a statute's plain meaning, we look not only to the text of the statutory provision but also "the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." Jacobs, 154 Wash.2d at 600, 115 P.3d 281. If, after this inquiry, the statute is susceptible to more than one reasonable interpretation, it is ambiguous and we "may resort to statutory construction, legislative history, and relevant case law" to resolve the ambiguity, Christensen v. Ellsworth, 162 Wash.2d 365, 373, 173 P.3d 228 (2007).
¶ 13 Mr. Winborne argues that given his five-year term of confinement the trial court was required under RCW 9.94A.701(9) to reduce his term of community custody to zero. The State disagrees and argues that we need look no further than Brooks. Jeffrey Brooks received a sentence that was materially identical to Mr. Winborne's and his amended judgment and sentence was notated in the same manner. See 166 Wash.2d at 666-67 & n. 1, 211 P.3d 1023. But the State does not address what impact, if any, RCW 9.94A.701(9) has on the validity of Mr. Winborne's sentence. Mr. Winborne does not dispute that his sentence complies with Brooks; he argues that the 2009 amendments render a Brooks notation insufficient. Brooks does not answer that question.
¶ 14 Other divisions of the Court of Appeals have considered Mr. Winborne's argument in unpublished decisions and have reached conflicting results. Division One concluded that the 2009 amendments reflect the legislature's view that a Brooks-notated sentence is indeterminate and that a sentencing court is required to reduce the term of community custody. State v. Linerud, noted at 154 Wash.App. 1001, 2010 WL 6961, at *1. Division Two reached the opposite conclusion, finding that the Brooks notation satisfied the requirements of RCW 9.94A.701(9). State v. Zwart, noted at 156 Wash.App. 1050, 2010 WL 2737173, at *1, review denied, 173 Wash.2d 1010, 268 P.3d 943 (2012); State v. Felix, noted at 163 Wash.App. 1019, 2011 WL 3844182, at *3.
¶ 15 Only two published decisions have discussed amended RCW 9.94A.701: State v. Winkle, 159 Wash.App. 323, 245 P.3d 249 (2011), review denied, 173 Wash.2d 1007, 268 P.3d 942 (2012), a Division One case, and State v. Franklin, 172 Wash.2d 831, 263 P.3d 585 (2011). Neither answers the question presented by Mr. Winborne. The Winkle court upheld a sentence with a Brooks notation under the 2009 amendments but relied on a separate provision of the SRA applicable to Mr. Winkle, a sex offender, requiring that sex offenders be transferred to community custody in lieu of earned early release. 159 Wash.App. at 330-31, 245 P.3d 249.
¶ 16 The Franklin court considered whether the 2009 amendments were retroactive and, if so, whether Mr. Franklin was entitled to be resentenced and have his term of community custody reduced. The Supreme Court found the amendments to be retroactive but that for preamendment sentences, such as Mr. Franklin's, it is the DOC, not the courts, that is charged with "bringing [them] into compliance with the amendments." 172 Wash.2d at 840, 263 P.3d 585 (citing LAWS OF *458 2009, ch. 375, § 9). In resolving Franklin on that basis, the court left open the question whether a Brooks notation to a judgment and sentence entered following the 2009 amendments would safeguard its validity. Id. at 838, 263 P.3d 585 (noting that "[t]his court has not addressed the continuing applicability of Brooks in light of RCW 9.94A.701(9)").[6]
¶ 17 With that limited history of judicial construction of the 2009 amendments in mind, we turn to the language of RCW 9.94A.701(9). Focusing first on the action the trial court is required to take, the subsection provides, "[t]he term of community custody specified by [RCW 9.94A.701] shall be reduced by the court" when the combined terms of confinement and community custody exceed the statutory maximum. In Mr. Winborne's case, the community custody specified by RCW 9.94A.701(3)(a) was 12 months. The term of community custody imposed by the court was 12 months. The court made no reduction despite the 5-year term of confinement, nor can it reasonably be argued that a Brooks notation operates as a reduction. While a Brooks notation may not be the opposite of a reduction, it is the negation of one; it is essentially a mechanism by which a court avoids making a reduction.
¶ 18 The State has argued that a Brooks notation eliminates the need for a reduction, because it ensures that the combined terms of confinement in combination with the term of community custody do not exceed the statutory maximum. See Franklin, 172 Wash.2d at 839, 263 P.3d 585. The Franklin court allowed in response only that "[t]he State is correct that the Brooks notation ensures that Franklin's sentence will not exceed the statutory maximum." Id. (emphasis added). The legislative mandates that a Brooks notation was found to satisfy in Brooks dealt with the ultimate sentence; they were not explicit as to its confinement and community custody components. RCW 9,94A.505(5) ("a court may not impose a sentence ... that exceeds the statutory maximum"); RCW 9.94A.030(18) (defining "determinate sentence").
¶ 19 With the 2009 amendments, the legislature has clearly and intentionally addressed the components. To take what RCW 9.94A.701(9) plainly presents as a three-step process (impose the term of confinement, impose the term of community custody, then reduce the term of community custody if necessary) and attempt to preempt it with a prophylactic Brooks notation is contrived. It has no other objective but to prevent the reduction of community custody called for by the statute and preserve a substitution of community custody for earned release time that was eliminated by the 2009 repeal of former RCW 9.94A.715 and amendment of RCW 9.94A.701(1)-(3). It transforms the term of community custody into a variable term, contrary to the clear intent of the 2009 changes.
¶ 20 The State protests that by interpreting the statute to require true fixed terms and a definitive reduction at the time of sentencing, a court's efforts to sentence an offender to the maximum possible penalty will be thwarted. The argument brings to mind Justice Frankfurter's observation that "[i]n matters of statutory construction ... it makes a great deal of difference whether you start with an answer or with a problem." Felix Frankfurter, Some Reflections on the Reading of Statutes, 47 COLUM. L.REV. 527, 529 (1947). The State starts with what it feels confident is an answer. But we do not share its confidence that the legislature's objective in its modifications of the SRA has been to protect a court's ability to sentence an offender to the maximum possible penalty. If it were, the provisions it repealed and replaced would be better suited than those it added in 2009. We approach the issue as a problem, which we are satisfied is answered by our examination of the plain language of the statute set forth above.
¶ 21 A court commits reversible error when it exceeds its sentencing authority under the SRA. State v. Hale, 94 Wash.App. 46, 53, 971 P.2d 88 (1999). The appropriate remedy when this occurs is generally to remand for resentencing. In re Sentences of Jones, 129 Wash.App. 626, 627-28, 120 P.3d 84 (2005).

*459 ADDITIONAL GROUNDS FOR REVIEW
¶ 22 Mr. Winborne filed a pro se statement of additional grounds for review (SAG) in which he argues that he should be allowed to withdraw his guilty plea because he was misled to believe that he would receive an exceptional downward sentence rather than the standard range sentence he received. SAG at 1. There is nothing in the record to suggest that Mr. Winborne was misled into pleading guilty; he has not even identified who supposedly misled him. The record instead reflects that Mr. Winborne understood the trial court's admonishments that it was not required to follow sentencing recommendations and that it must ordinarily sentence offenders within the standard range. The plea agreement signed by Mr. Winborne also reflects that the sentencing determination was up to the court and that he was not necessarily going to receive an exceptional downward sentence by pleading guilty.
¶ 23 While an affirmative misrepresentation that Mr. Winborne would receive an exceptional sentence downward if he pleaded guilty would be a basis for permitting withdrawal of his plea, State v. Miller, 110 Wash.2d 528, 531, 756 P.2d 122 (1988) (finding that a guilty plea is not knowingly made when it is based on misinformation regarding sentencing consequences), overruled on other grounds by State v. Barber, 170 Wash.2d 854, 248 P.3d 494 (2011), there is nothing in our record supporting such an allegation. If Mr. Winborne wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition. State v. McFarland, 127 Wash.2d 322, 335, 899 P.2d 1251 (1995).
¶ 24 We remand for resentencing consistent with the opinion.
WE CONCUR: KORSMO, A.C.J., and BROWN, J.
NOTES
[1] Chapter 9.94A RCW.
[2] Repealed by LAWS OF 2009, ch. 28, § 42.
[3] Repealed by LAWS OF 2011, 1st Spec. Sess., ch. 40, § 39.
[4] The SRA requires courts to impose a determinate sentence, defined as "a sentence that states with exactitude the number of actual years, months, or days of total confinement, of partial confinement, [or] of community custody." RCW 9.94A.030(18).
[5] Earlier versions of Senate Bill and Substitute Senate Bill 5288 were entitled "AN ACT Relating to offender risk assessments" and were later referred to as "Reducing the categories of offenders supervised by the department of corrections." 1 Senate Journal, 61st Leg., Reg. Sess., at 94, 120, 327 (Wash. 2009).
[6] The court's resolution of Franklin on this basis eliminated bases for review of the unpublished decisions of Divisions One and Two in Linerud and Zwart. Both of those cases involved sentences entered before the 2009 amendments.