IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

STATE OF WASHINGTON,      )      No. 68075-7-I
                          )
            Respondent,   )
                          )
    v.                    )
                          )
DWIGHT BENSON,            )      UNPUBLISHED OPINION
                          )
            Appellant.    )      FILED: September 16, 2013
_____)

VERELLEN, J. — Dwight Benson appeals his convictions for felony driving under

the influence (DUI), reckless driving, and driving while license revoked. Benson, who is

African American, argues that the trial court erred by allowing the State to exercise a

peremptory challenge to exclude the only remaining African American juror from the

panel of prospective jurors. Under the existing Batson[1] standards, the core question is

whether the prosecutor relied upon prospective jurors' negative experiences with police

as a proxy for race, resulting in purposeful discrimination. Although a peremptory

challenge based on past negative experiences with police has the potential to be

misused as a proxy for race, the totality of the circumstances here supports the trial

court's finding that the prosecutor had a good-faith basis for exercising the peremptory

challenge. The prosecutor did not inquire about any negative experiences with police,

or make any race-based inquiries. Comparative juror analysis does not reveal a

_____

[1] Batson v. Kentucky, 476 U.S. 79, 85, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

questionable motive, and there are no other "red flags" suggesting purposeful discrimination. The trial court correctly applied the existing legal standards, and Benson fails to demonstrate the trial court's finding that there was no purposeful discrimination was clearly erroneous. We affirm the conviction, but remand for correction of sentencing errors.

## FACTS

On April 2, 2011, Benson took pills, drank alcohol, and then drove his car into the back of Abdul Hared's stopped car. When Hared approached Benson, he smelled alcohol. Officer Christopher Caron observed that Benson was unsteady on his feet and smelled of alcohol. Benson's speech was slow and slurred, and he admitted that he had been drinking.[2] He tried to recite the alphabet, but failed. When Officer Nathan Shopay tried to talk to Benson, Benson had trouble focusing on any subject. Officer Shopay and Officer Elliott Easton both testified that Benson appeared impaired.[3] Benson refused to provide a breath sample. The police did not seek a warrant to obtain a blood test.

Benson had three prior DUI convictions and one prior conviction for being in physical control of a vehicle while under the influence. At the time of the April 2011 accident, his driver's license was revoked based on his convictions for three serious traffic offenses within a five-year period.

---

[2] Benson assigned error to the trial court's initial failure to enter findings of fact and conclusions of law in denying his pretrial motion to suppress his statements to police. However, those findings have since been filed, and Benson raises no issue relating to the findings in this appeal.

[3] In addition to his difficulty with conversation, they both observed that Benson staggered, had trouble standing, and had alcohol on his breath.

Based on his four prior qualifying convictions within the previous 10 years, Benson was charged with felony DUI.[4] He was also charged with reckless driving,[5] and driving while license revoked in the first degree.[6] Following a jury trial, Benson was convicted as charged.

Benson's appeal concerns the State's peremptory challenge of juror 9, an African American woman. The court began jury selection by asking several questions of the entire panel of prospective jurors. Then the court allowed the prosecutor and defense counsel two alternating 20-minute rounds of questioning.

One of the trial court's general questions was whether any panel member had an "extremely unpleasant experience with a police officer."[7] Seven individuals indicated they had.[8] Of those seven, only three, jurors 9, 16 and 23, were ever seated in the jury box, where they were subject to peremptory challenge. The prosecutor did not ask any of the prospective jurors about their negative experiences with police. No one asked juror 16 or 23 to explain their answer to the negative experiences question.[9]

Benson's counsel had the final round of questioning, and asked juror 9 to explain her negative experiences with police. Juror 9 explained that she had been stopped for expired license tabs, but the officer appeared to be suspicious of her:

---

[4] RCW 46.61.5055(4)(a).

[5] RCW 46.61.500.

[6] RCW 46.20.342(1)(a).

[7] Report of Proceedings (RP) (Nov. 16, 2011) at 550.

[8] These were jurors 9, 16, 23, 28, 36, 37, and 41.

[9] Juror 23, who was dismissed as a result of a peremptory challenge by the defense, was asked about his response that he was once in an automobile accident. He answered, "It was [a] single car accident. I was by myself on the side of the road, on my way to an Air Force Reserve meeting on a Saturday. An officer responded and got my license plates." RP (Nov. 16, 2011) at 614.

JUROR: My tabs were—I had bought them, but I didn't put them on at the time. And I had four children with me. And when he stopped me, I had asked what I had did wrong. And he said, "[W]ell, . . . I noticed your tabs are expired." And I had said, "[O]h." And at that time I thought I had bought the tabs. So, I thought okay. But, then, he started to kind of looking in my car like there were other things going on. And I thought that am I going to get a ticket or, you know, I was willing to give my information. But, I felt like when I got stopped, okay, I didn't have my tabs on, but I also felt like when he stopped me, like he was looking for something else. And I had my children with me. I felt like, okay, what else did I do wrong?

COUNSEL: Okay. Did the officer treat you fairly?

JUROR: I felt I was treated fair in what was asked of me. He stopped me. "Did you know that your tabs expired?" Yes, I did, but I did not put them on. But, then I felt like . . . he was looking for something else besides that. So, I felt a little, I didn't feel easy about that. So, I guess there was kind of a mixed feeling, but I felt like he stopped me, okay. I needed to make sure that I had tabs. And then also, you know, he was looking kind of past me into my car, like maybe something else was going on.[10]

Based on the trial court's predetermined procedure for jury selection, the State did not have another round to pose additional questions to any of the prospective jurors.

The State exercised three of its peremptory challenges to jurors 4, 13 and 19, who were reluctant to convict without a numerical blood-alcohol test result. Jurors 4 and 19 were both Caucasian men. Benson did not object to the State's peremptory challenge to juror 13, an African American woman.[11]

---

[10] RP (Nov. 16, 2011) at 609-10.

[11] Benson's counsel explained that he did not object to the prosecutor's challenge for cause of juror 13 "because there was one [African American] left on the panel and the reason regarding the lack of [any blood] test." RP (Nov. 16, 2011) at 620.

When the State exercised a peremptory challenge to juror 9, Benson objected, pointed out that juror 9 was the last remaining African American juror on the panel, and argued that the State did not have "a nonracial reason" for its challenge.[12]

The trial court asked the prosecutor to explain the basis for its peremptory challenge. The prosecutor argued that in jury selection and pretrial motions, Benson's counsel had signaled the defense theory that the police investigation was inadequate or conclusory. The prosecutor was concerned that juror 9 would be more responsive to that argument based on her own prior negative experience with police:

> Juror number 9, I completely liked her in my questioning of her, my first and second round. Then defense counsel in his second round talked to her about experience with a police officer. And she talked about being pulled over for something, and how the police officer was looking for something else. And I got the impression from what she was saying that she believed she was being harassed or interrogated further because she is a minority. And that is not an issue in this case. In fact, the victim in this case is a minority as well.
>
> . . . .
>
> It's my concern that she will have some bad view of officers because they focused their investigation on the defendant, who is an African American male. The other gentleman [the victim] is an African male.[13]

Benson's counsel argued that the prosecutor's explanation was "disingenuous," and claimed that other jurors the State accepted were "in a similar circumstance":

> People said they had an interaction with other officers. Juror number 6 was cited by an officer. That sort of thing. But I don't believe that what juror number 9 indicated was to the extent that it really prejudiced her. She could have been pulled over, so there is no indication that this person

---

[12] RP (Nov. 16, 2011) at 620.

[13] RP (Nov. 16, 2011) at 621.

had interaction with any of the officers involved in this particular case. So it is the defense position that there is not sufficient grounds to strike her.[14]

In response, the prosecutor explained that she had been saving a peremptory challenge to exclude juror 28, a Caucasian man, on the same basis. Juror 28 indicated in response to the trial court's initial general question that he had a prior negative experience with police. In response to questioning by defense counsel, juror 28 explained further that while working as a truck driver, he felt that a police officer unfairly blamed him for a collision with another truck. He believed that the officer might have known the other driver, or harbored a bias against him because his truck had an out-of-state license plate. The prosecutor explained:

> I wanted to say something for the record. Juror number 28 was another person, a Caucasian male, who identified that he had a bad interaction with the police officer when he got into an accident with another truck. And I was saving a strike for him had we gotten to him on that basis.
>
> I felt similarly to juror number 9. They both seemed to have a situation where they felt like they were the ones who were singled out and being picked on.
>
> I was certainly going to strike him, if we had gotten there.[15]

The trial court stated that it understood the State's concern with having jurors with prior negative experiences with police, but was sensitive that using that factor to exclude jurors could be discriminatory in some cases:

> I obviously don't know what the defense theory is, but we are not talking about a situation where somebody is going to allege that someone was stopped unfairly by police.

---

[14] RP (Nov. 16, 2011) at 622.
[15] RP (Nov. 16, 2011) at 622.

There may be, however, an allegation that the investigation was inadequate by the police, especially in a case where we don't have a [blood-alcohol test] result.

So I can see why the State would care about having jurors who have not had negative interactions with the police. On the other hand, one of the things that is so troubling about excusing African Americans from a jury trial is that they have had the experience [that] not necessarily all our other jurors have had. I am very mindful of that.

In this situation, I think this is a very tough case, to be honest . . . . I just think that if juror 28 [was] African American, I would have been more inclined to think that a challenge was not motivat[ed]. . . by the nature of the defense.[16]

In addressing the trial court's concerns, the prosecutor reemphasized that the basis for its peremptory challenge was that it anticipated a defense argument that the officers conducted a cursory or incomplete investigation:

Defense counsel kind of pushed that fact of the officer not really investigating or doing the test with the other driver or anything like that. So I do think that becomes a significant issue. I want to be very clear. That's why, that's the reason for my striking juror number 9.[17]

Based on the prosecutor's explanation, the trial court concluded that the State's peremptory challenge to juror 9 was reasonable, was not based on race, was not the result of purposeful discrimination, and was made in good faith.[18] Juror 9 was excused from the jury panel.

## DISCUSSION

### Batson Challenge

Benson assigns error to the trial court's determination that the prosecutor did not engage in purposeful discrimination. Benson fails to demonstrate reversible error.

---

[16] RP (Nov. 16, 2011) at 623-24.

[17] RP (Nov. 16, 2011) at 624.

[18] RP (Nov. 16, 2011) at 626.

The equal protection clause guarantees a defendant the right to be tried by a jury selected free from racial discrimination.[19] A prosecutor's use of a peremptory challenge based on race violates a defendant's right to equal protection.[20] The United States Supreme Court in Batson established the test to determine whether a juror was peremptorily challenged pursuant to discriminatory criteria. First, the defendant must establish a prima facie case of purposeful discrimination;[21] second, the burden shifts to the State to articulate a race-neutral explanation for challenging the juror;[22] and third, the trial court must decide whether the defendant has demonstrated purposeful discrimination.[23] The ultimate burden of persuasion that there has been purposeful discrimination rests with the defendant.[24] The trial court's determination as to the existence of purposeful discrimination will be upheld unless clearly erroneous.[25] In State v. Saintcalle, our Supreme Court recently advocated a change to the existing Batson procedures in Washington, but declined to make any changes on the briefing

---

[19] U.S. CONST. amend. XIV; Batson, 476 U.S. at 85.

[20] State v. Cook, No. 67332-7-I, 2013 WL 2325117, at *1 (Wash. Ct. App. May 28, 2013) (citing Batson, 476 U.S. at 86).

[21] Batson, 476 U.S. at 93-96.

[22] Id. at 97-98.

[23] Id. at 98.

[24] Rice v. Collins, 546 U.S. 333, 338, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) (citing id.).

[25] State v. Hicks, 163 Wn.2d 477, 486, 181 P.3d 831 (2008); see also United States v. Roberts, 163 F.3d 998, 999 (7th Cir. 1998).

before it.[26] The lead opinion confirmed the deference given to the trial court under the existing "purposeful discrimination" standard:

> A trial court's decision that a challenge is race-neutral is a factual determination based in part on the answers provided by the juror, as well as an assessment of the demeanor and credibility of the juror and the attorney. Batson, 476 U.S. at 98 n.21. The defendant carries the burden of proving purposeful discrimination. Id. at 93. The trial judge's findings are "accorded great deference on appeal" and will be upheld unless proved clearly erroneous. Hernandez v. New York, 500 U.S. 352, 364, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991). Deference to trial court findings is critically important in Batson cases because the trial court is much better positioned than an appellate court to examine the circumstances surrounding the challenge. Further, deference is important because trial judges must have some assurance that the rest of the trial will not be an exercise in futility if it turns out an appellate court would have ruled on a Batson challenge differently.[27]

Under the existing Batson standard, where the State articulates a race-neutral explanation for its challenge, the trial court is not required to analyze the first step of whether the defendant established a prima facie case of purposeful discrimination.[28] Here, the State explained that juror 9's past negative experience with a police officer would potentially make her more likely to accept a defense argument that the officers focused on collateral considerations and did not conduct a thorough investigation of Benson. The second step of the process does not demand an explanation that is persuasive or plausible: "'At this [second] step of the inquiry, the issue is the facial

---

[26] No. 86257-5, 2013 WL 3946038, at *12 (Wash. Aug. 1, 2013) (indicating it would consider changing the Batson framework based on a future fully-briefed appeal advocating a new standard, or by court rule or statute).

[27] Id.

[28] See, e.g., State v. Luvene, 127 Wn.2d 690, 699, 903 P.2d 960 (1995) (citing Hernandez, 500 U.S. at 359).

validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'"[29]

Benson's argument that the State's proffered rationale was a pretext and mere proxy for race concerns the third step, which required the trial court to consider the State's explanation and determine whether the defendant has demonstrated purposeful discrimination.[30] The prosecutor's explanation "must be viewed in the totality of the prosecutor's comments."[31] The reviewing court considers the overall circumstances, including any red flags of a discriminatory motive.[32]

Benson contends that the trial court erred by accepting the prosecutor's challenge of juror 9 based on her past negative experience with police, claiming that the proffered rationale was a pretext and mere proxy for race. However, the record does not support Benson's argument.

A prosecutor's focus on jurors' perceptions of police could be an improper proxy for race in jury selection. For example, in State v. Bishop, a case cited by Benson, the prosecutor excused a juror because she lived in a predominantly African American neighborhood, arguing that she would likely be anesthetized to violence and believe that

---

[29] Purkett v. Elem, 514 U.S. 765, 768, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995) (alteration in original) (quoting Hernandez, 500 U.S. at 360).

[30] Batson, 476 U.S. at 98; see also Reed v. Quarterman, 555 F.3d 364, 368 (5th Cir. 2009); Purkett, 514 U.S. at 768 ("implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination").

[31] Cook, 2013 WL 2325117 at *3.

[32] See id. (prosecutor's peremptory challenge based in part on defense counsel's use of the term "brother" when speaking to an African American juror and prosecutor's purportedly "confusing" one African American juror with another "raises a red flag that there is some discriminatory intent").

police are unfair.[33] This rationale was rejected as "little more than the assumption that one who lives in an area heavily populated by poor black people could not fairly try a black defendant."[34] Similarly, in Turnbull v. State, a second case cited by Benson, the prosecutor asked jurors if they thought that police racially profile people.[35] Five African American individuals answered affirmatively, and the State exercised peremptory strikes against four of them and a challenge for cause as to the fifth.[36] The Turnbull court concluded that the State's question was "subterfuge," noting that racial profiling was not an issue in the case and that the question was not used to elicit the jurors' feelings about law enforcement.[37]

Because the total circumstances here are distinguishable from cases where prosecutors used pretextual criteria to purposefully discriminate, Bishop, Turnbull and similar pretext decisions are not persuasive. Here, the State did not initiate the inquiry as to negative experiences with police, did not inquire of any prospective juror regarding such negative experiences, and did not ask any juror any questions related to race. In addition, the State's belief that Benson would attempt to discredit the police investigation was realistic and related to the facts of the case. The primary witnesses were police officers, and Benson's counsel's questions to potential jurors signaled that he would dispute the adequacy of the investigation.[38] These circumstances are not

---

[33] 959 F.2d 820, 825 (9th Cir. 1992).

[34] Id.

[35] 959 So.2d 275, 276 (Fla. App. 3 Dist. 2006).

[36] Id.

[37] Id. at 276-77.

[38] At trial, Benson did challenge the adequacy of the police investigation for failing to photograph the accident scene and obtain a blood test. Benson's counsel

analogous to those in which a prosecutor employs a "ruse" or "subterfuge" to drum up thinly-veiled racially discriminatory reasons to strike a juror.

A comparison of the State's treatment of other jurors here likewise fails to support a claim of purposeful discrimination. The State's reason for using a peremptory strike against a prospective juror may be a pretext for purposeful discrimination, and thus not race neutral, if other prospective jurors who made similar assertions were seated as jurors.[39] No two potential jurors are identical, but a meaningful comparison between jurors requires careful consideration of the precise information in the record.[40] Thus, if a prosecutor's proffered reason for striking a minority panelist applies just as well to an otherwise similar nonminority panelist who is permitted to serve, "that is evidence tending to prove purposeful discrimination to be considered at Batson's third step."[41] And "[i]f the State asserts that it struck a black juror with a particular characteristic, and it also accepted nonblack jurors with that same characteristic, this is evidence that the asserted justification was a pretext for discrimination, even if the two jurors are dissimilar in other respects."[42]

Benson suggests that all seven of the prospective jurors who indicated that they had an unpleasant experience with police were comparable to juror 9. But of those seven, only jurors 9 and 16 were ever subject to challenge by the prosecutor. Accordingly, only juror 16 is potentially comparable. But juror 16 was never asked to

---

developed these arguments both on cross-examination of the officers and again in closing argument.

[39] Cook, 2013 WL 2325117 at *3.

[40] See Reed, 555 F.3d at 375-81.

[41] Miller-El v. Dretke, 545 U.S. 231, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005).

[42] Reed, 555 F.3d at 376.

explain his unpleasant experience. The record does not support the proposition that juror 16 harbored the same belief that led to the prosecutor's peremptory challenge of juror 9, i.e., the perception that the police officers' investigation was inadequate due to collateral circumstances. The prosecutor had no opportunity to follow up with juror 16 in light of juror 9's answers to defense counsel's questions in the final round of questioning. Juror 16 and juror 9 both reported negative experiences with police. But this, of itself, was not the basis for the challenge to juror 9. Benson offers no authority that the prosecutor had an obligation to anticipate the need to build a record as to juror 16.[43]

In the trial court and on appeal, the defense suggests juror 6 is a comparable juror. But juror 6 did not respond when the judge asked whether jurors had had an extremely unpleasant experience with the police and described his experience with police as "extremely pleasant."[44] Juror 6 described an incident where he lost control of his car on the freeway and crashed, but the police responded and "treated me well."[45] This is not comparable to juror 9's experiences or answers.

Notably, the State had the same rationale for excluding juror 9, an African American, and juror 28, a nonminority. Both were more likely, based on their individual experiences, to be more responsive to a defense argument that the police officers who arrested Benson and investigated his offense allowed their biases to influence their investigation. This strongly supports the trial court's conclusion that the State's

---

[43] Failure to explore a topic in voir dire may be some evidence of pretext, but not where there are reasonable explanations for the failure. See Puckett v. Epps, 641 F.3d 657, 664-65 (5th Cir. 2011), cert. denied, 132 S. Ct. 1537, 182 L. Ed. 2d 174 (2012).

[44] RP (Nov. 16, 2011) at 550.

[45] RP (Nov. 16, 2011) at 614.

13

challenge was not based on race. As recognized by the trial court, juror reactions to the limited investigation by the police in this case were legitimate concerns for the prosecutor. The record on appeal does not reveal disparate treatment based on comparative juror analysis.

Finally, in making its determination, the trial court also had the opportunity to observe the prosecutor's demeanor. "Batson requires the judge to determine whether a race-neutral reason offered for a challenge is honest, and [trial court] judges are much better situated than appellate judges to evaluate the honesty of the lawyers who practice in [trial] court."[46] And there were no red flags based upon other conduct by the prosecutor suggesting a racial motive. A focus on general attitudes toward police and past negative experiences with police might be used as proxy for race.[47] But here, the specific responses by juror 9 and the explanation offered by the prosecutor were analyzed by the trial court. The trial court determined that the prosecutor had a good faith concern that juror 9 would be predisposed to the defense theory that police did not thoroughly and objectively investigate Benson's DUI, a concern the prosecutor also had regarding a nonminority member of the jury panel. The record supports the factual

---

[46] Roberts, 163 F.3d at 1000 (even where "jury selection raises substantial questions about the conduct and candor of the prosecutor who selected th[e] jury," the trial court's determination that the prosecutor's rationale was valid "must be accepted").

[47] There are several decisions accepting consideration of past negative police experiences as a proper basis for exercise of peremptory challenges under Batson. See, e.g., State v. Rhodes, 82 Wn. App. 192, 202-03, 917 P.2d 149 (1996) (negative contact with police was sufficient race-neutral explanation); People v. Booker, 51 Cal. 4th 141, 245 P.3d 366, 390 n.13, 119 Cal. Rptr. 3d 722 (2011); People v. Avila, 38 Cal. 4th 491, 133 P.3d 1076, 1113-17, 43 Cal. Rptr. 3d 1 (2006); People v. Gabler, 958 P.2d 505, 508 (Colo.App. 1997); State v. Jackson, 73 Conn. App. 338, 808 A.2d 388, 399-402 (2002); State v. Pendleton, 725 N.W.2d 717, 726 (Minn. 2007); Mitleider v. Hall, 391 F.3d 1039, 1048 (9th Cir. 2004); United States v. Vaccaro, 816 F.2d 443, 457 (9th Cir. 1987).

determination by the trial court that the prosecutor did not engage in purposeful discrimination. Benson fails to demonstrate that the trial court ruling was clearly erroneous. Accordingly, we affirm his convictions.

*Sentence*

The State concedes that remand is required for the trial court to strike the term of community custody. The State's concession is well taken. The trial court imposed a 60-month term of incarceration for the felony DUI, the statutory maximum.[48] The trial court was required under RCW 9.94A.701(9) to reduce his term of community custody to zero.[49]

Benson also correctly claims that the State failed to prove his offender score by providing certified copies of his prior judgments and sentences, and failed to prove that his other prior convictions did not "wash out" of his score.[50] At his sentencing hearing, Benson agreed that his offender score should be calculated with the score of 9 plus, the maximum offender score class. The trial court calculated Benson's offender score as

---

[48] RCW 46.61.502(6); RCW 9A.20.021(1)(c)

[49] State v. Boyd, 174 Wn.2d 470, 473, 275 P.3d 321 (2012); State v. Winborne, 167 Wn. App. 320, 329, 273 P.3d 454, review denied, 174 Wn.2d 1019 (2012).

[50] RCW 9.94A.525(2)(d) and (e) provide that "serious traffic convictions shall not be included in the offender score if, since the last date of release from confinement . . . pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender spent five years in the community without committing any crime that subsequently results in a conviction" and that "[i]f the present conviction is felony driving while under the influence of intoxicating liquor or any drug (RCW 46.61.502(6)) or felony physical control of a vehicle while under the influence of intoxicating liquor or any drug (RCW 46.61.504(6)), prior convictions of felony driving while under the influence of intoxicating liquor or any drug, felony physical control of a vehicle while under the influence of intoxicating liquor or any drug, and serious traffic offenses shall be included in the offender score if: (i) The prior convictions were committed within five years since the last date of release from confinement . . . or entry of judgment and sentence; or (ii) the prior convictions would be considered 'prior offenses within ten years' as defined in RCW 46.61.5055."

16 based on the agreement of counsel, the four prior DUI convictions proved at trial, and the prosecutor's statement of Benson's offender history.

The State must prove a defendant's criminal history by a preponderance of the evidence.[51] The trial court "may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing."[52]

> To establish the existence of a [prior] conviction, a certified copy of the judgment and sentence is the best evidence. The State may introduce other comparable evidence only if it shows that the writing is unavailable for some reason other than the serious fault of the proponent. In that case, comparable documents of record or trial transcripts may suffice.[53]

A defendant generally "'cannot waive a challenge to a miscalculated offender score.'"[54]

The State was required to prove the validity of Benson's prior convictions, and to demonstrate that the convictions had not washed out. Because the four prior DUI convictions were elements of the felony DUI offense that Benson stipulated to at trial, any argument about the validity of those four convictions is waived. However, their inclusion in Benson's offender score is a different issue. The State failed to prove by a preponderance of evidence that none of the prior convictions had washed out under the special washout rules applicable to felony DUI.[55] This was error. Benson could not

---

[51] State v. Ford, 137 Wn.2d 472, 479-80, 973 P.2d 452 (1999).

[52] RCW 9.94A.530(2).

[53] State v. Rivers, 130 Wn. App. 689, 698-99, 128 P.3d 608 (2005) (citing State v. Lopez, 147 Wn.2d 515, 519, 55 P.3d 609 (2002)).

[54] State v. Ross, 152 Wn.2d 220, 231, 95 P.3d 1225 (2004) (quoting In re Pers. Restraint of Goodwin, 146 Wn.2d 861, 874, 50 P.3d 618 (2002)).

[55] State v. Morales, 168 Wn. App. 489, 492-501, 278 P.3d 668 (2012) (where felony DUI conviction falls within provisions of RCW 46.61.502(6)(a), sentencing court must calculate defendant's offender score pursuant to washout provision of RCW 9.94A.525).

agree to an incorrect offender score that ignored those washout rules.[56] We remand for the trial court to determine the correct offender score.[57]

We affirm the convictions, and remand for the limited purposes of allowing the State to prove Benson's offender score and to correct the erroneous sentence.

WE CONCUR:

---

[56] State v. Weaver, 171 Wn.2d 256, 259-60, 251 P.3d 876 (2011) (where defendant did not object to offender score calculation at sentencing but contested the proof of criminal history used to determine his offender score on appeal, the issue was not waived because defendant did not "affirmatively acknowledge" criminal history); State v. Mendoza, 165 Wn.2d 913, 929, 205 P.3d 113 (2009) (State bears the burden to prove the existence of prior convictions by a preponderance of the evidence; "a defendant cannot waive a challenge to a miscalculated offender score").

[57] Where, as here, there was no objection at sentencing and the State consequently has not had an opportunity to put on its evidence, it is appropriate to allow additional evidence at resentencing. Mendoza, 165 Wn.2d at 930; State v. Bergstrom, 162 Wn.2d 87, 97-98, 169 P.3d 816 (2007).