**FILED**
**May 3, 2016**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33209-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| LONNIE DEAN GLEIM, JR., | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Lonnie Gleim appeals his convictions for first degree possession of depictions of a minor engaged in sexually explicit conduct. He raises four issues on appeal. First, he argues the trial court gave him a sentence that exceeded the statutory maximum. Second, he argues the trial court imposed $1,039.10 in discretionary legal financial obligations (LFOs) without making an adequate inquiry into his ability to pay. In his first argument in his statement of additional grounds for review (SAG), he argues the trial court violated his right to speedy sentencing when it failed to sentence him within 40 days of his conviction. In his second SAG argument, he argues the trial court erred when it rejected the parties' joint recommendation for an exceptional sentence downward and instead imposed a sentence at the high end of the standard range. We

accept Mr. Gleim's first two arguments, and reject his two SAG arguments. We therefore reverse in part and remand for the trial court to resentence Mr. Gleim consistent with this opinion.

FACTS

The State charged Mr. Gleim with 10 counts of first degree possession of depictions of a minor engaged in sexually explicit conduct under RCW 9.68A.070(1)(a) and two counts of first degree dealing in depictions of a minor engaged in sexually explicit conduct under RCW 9.68A.050(1)(a). On December 10, 2014, Mr. Gleim pleaded guilty to four counts of first degree possession of depictions of a minor engaged in sexually explicit conduct. In exchange for Mr. Gleim's guilty plea, the State agreed to recommend a sentence of 36 months' confinement and 36 months' community custody. At the plea hearing, the trial court ordered the Department of Corrections (DOC) to submit a presentence investigation report (PSR) within 30 days.

DOC failed to complete the PSR by January 9, 2015. The trial court eventually continued the sentencing hearing to February 23, 2015. On February 19, Mr. Gleim moved to dismiss the case, arguing the trial court violated his right to speedy sentencing under RCW 9.94A.500(1) and CrR 7.1(a)(1). DOC finally submitted the PSR right before the February 23, 2015 sentencing hearing. The trial court continued the hearing to

2

give itself and Mr. Gleim time to review the PSR and to give the State time to respond to Mr. Gleim's motion.

On March 13, 2015, the trial court held the sentencing hearing. Mr. Gleim's standard range was 77 to 102 months. The State and Mr. Gleim both requested an exceptional sentence downward of 36 months' confinement followed by 36 months' community custody. The trial court sentenced Mr. Gleim to 102 months' confinement on each of the four counts, all to run concurrently, with credit for 143 days served. The trial court also sentenced Mr. Gleim to "community custody . . . for 36 months or for the period of earned . . . early release awarded pursuant to RCW 9.94A.728, whichever is longer." Clerk's Papers (CP) at 46.

The trial court then imposed $1,639.10 in LFOs. Of that sum, $1,039.10 were discretionary costs, which included a $775.00 court-appointed attorney fee, $200.00 in "court costs," and a $64.10 sheriff's service fee. After imposing the LFOs, the trial court conducted the following inquiry:

> [THE COURT:] Financial obligations, between court costs, victim's assessment and fees, totals $1,639.10.
> When you are employed, what is it that you do?
> THE DEFENDANT: Various general labor.
> THE COURT: Okay. Payments will be not less than $50 per month, and that will commence 90 days after release.

Report of Proceedings (RP) at 11-12. The judgment and sentence contained the

following boilerplate language: "the defendant has the ability or likely future ability to

pay the legal financial obligations ordered herein." CP at 43. Mr. Gleim did not object to

the LFOs at the sentencing hearing.

At the end of the hearing, the trial court addressed Mr. Gleim's motion to dismiss.

The trial court found that the delay did not violate Mr. Gleim's right to speedy sentencing

because the length of the delay was not oppressive, the reason for the delay was because

the DOC had to obtain a lot of the information from Nevada in order to complete the

PSR, and Mr. Gleim was not prejudiced because the court gave him credit for time

served. Mr. Gleim appeals.

## ANALYSIS

A.     *Legality of sentence imposed and remedy*

1.     Legality of sentence

Mr. Gleim argues, and the State concedes, that the trial court gave him a sentence

that exceeded the statutory maximum.[1] This is an issue of statutory interpretation and is

reviewed de novo. *State v. Bruch*, 182 Wn.2d 854, 859, 346 P.3d 724 (2015).

---

[1] Mr. Gleim did not object to the terms of his sentence at the sentencing hearing. However, unpreserved sentencing errors may be raised for the first time on appeal. *See State v. Ford*, 137 Wn.2d 472, 477-78, 973 P.2d 452 (1999).

A defendant's sentence cannot exceed the statutory maximum term for the class of crime for which the offender was convicted. RCW 9A.20.021(1). "Possession of depictions of a minor engaged in sexually explicit conduct in the first degree is a class B felony punishable under chapter 9A.20 RCW." RCW 9.68A.070(1)(b). The maximum sentence for a class B felony is 10 years, or 120 months. RCW 9A.20.021(1)(b).

When a person is convicted of a sex offense, the trial court must sentence that person to 36 months' community custody in addition to the other terms of the sentence. RCW 9.94A.701(1)(a). Terms of confinement and community custody are both included in the calculation of the statutory maximum term, and the combination of the two cannot exceed the statutory maximum. RCW 9.94A.505(5); *State v. Boyd*, 174 Wn.2d 470, 473, 275 P.3d 321 (2012). Accordingly, trial courts must reduce the term of community custody "whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime as provided in RCW 9A.20.021." RCW 9.94A.701(9). A trial court may also impose a variable period of community custody that recognizes DOC's authority to transfer the earned early release of certain offenders into community custody under RCW 9.94A.729(5). *See Bruch*, 182 Wn.2d at 862-63.

5

Here, the trial court sentenced Mr. Gleim to 102 months' incarceration, followed by 36 months' community custody. Mr. Gleim's total sentence is 138 months, which clearly exceeds the 120-month statutory maximum.

2.      Remedy

The State asks this court to strike the 36-month term of community custody and instruct the trial court to impose "community custody for a period of at least 18 months, plus all accrued earned release time at the time of release." Br. of Resp't at 6-7. Mr. Gleim requests a full resentencing.

When the trial court imposes a sentence in violation of RCW 9.94A.701(9), this court remands to the trial court to either amend the community custody term or to resentence consistent with the statute. *In re Pers. Restraint of McWilliams*, 182 Wn.2d 213, 217, 340 P.3d 223 (2014); *Boyd*, 174 Wn.2d at 473; *State v. Winborne*, 167 Wn. App. 320, 330, 273 P.3d 454 (2012) (remanding for resentencing after a RCW 9.94A.701(9) violation). RCW 9.94A.701(9) only applies to terms of confinement imposed within the standard range. *McWilliams*, 182 Wn.2d at 217. "[I]f RCW 9.94A.701(9) applies, the remedy is clear." *Id.*

Here, the 102-month term of confinement was within Mr. Gleim's standard range, so RCW 9.94A.701(9) applies. Thus, under *McWilliams*, we must remand to the trial

court to either amend the community custody term or to resentence Mr. Gleim consistent with the statute. On remand, the trial court may decide to keep the 102-month term of confinement and impose "community custody for a period of at least 18 months, plus all accrued earned early release time at the time of release," and this sentence would not be impermissibly indeterminate.[2] *See Bruch*, 182 Wn.2d at 862-65. However, this is one of many resentencing options the trial court has available, and neither the judgment and sentence nor the transcript of the sentencing hearing definitively indicates how the trial court would resentence Mr. Gleim. The trial court should be permitted to exercise its sentencing discretion on remand, subject to the foregoing statutory constraints.[3]

B.     *Unpreserved LFO error*

For the first time on appeal, Mr. Gleim contends that the trial court improperly imposed LFOs without considering his financial resources under RCW 10.01.160(3).

---

[2] The "36 months or for the period of earned . . . early release . . . whichever is longer" approach currently contained in Mr. Gleim's judgment and sentence reflects the language of former RCW 9.94A.715(1) (2006), which allowed trial courts to impose variable terms of community custody. However, under the current statute, RCW 9.94A.701, this "whichever is longer" approach is impermissibly variable. *See Winborne*, 167 Wn. App. at 329-30.

[3] Because this error implicates the trial court's discretion to determine the length of the new sentence and does not involve a simple ministerial correction, Mr. Gleim's right to be present applies at resentencing. *See State v. Ramos*, 171 Wn.2d 46, 49, 246 P.3d 811 (2011).

Whenever a person is convicted, the trial court "may order the payment of a legal financial obligation" as part of the sentence. RCW 9.94A.760(1); *accord* RCW 10.01.160(1). Because payment of costs described under these statutes is discretionary, we refer to such costs as discretionary LFOs. By statute, the trial court is not authorized to order a defendant to pay discretionary LFOs unless he or she is or will be able to pay them. RCW 10.01.160(3). In determining the amount and method of payment of such costs, the trial court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose. RCW 10.01.160(3). Accordingly, "a trial court has a statutory obligation to make an individualized inquiry into a defendant's current and future ability to pay before the court imposes LFOs." *State v. Blazina*, 182 Wn.2d 827, 830, 344 P.3d 680 (2015).

Importantly, "the court must do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry." *Id.* at 838. Therefore, "[t]he record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay." *Id.* Although courts have little guidance regarding what counts as an "individualized inquiry," *Blazina* makes clear, at a minimum, the sentencing court "must also consider important factors . . . such as incarceration and a defendant's other debts, including restitution, when determining a

8

defendant's ability to pay," and "should also look to the comment in court rule GR 34 for guidance." *Id.* However, "[n]either RCW 10.01.160 'nor the constitution requires a trial court to enter formal, specific findings regarding a defendant's ability to pay [discretionary] court costs.'" *State v. Lundy*, 176 Wn. App. 96, 105, 308 P.3d 755 (2013) (quoting *State v. Curry*, 118 Wn.2d 911, 916, 829 P.2d 166 (1992)).

"A defendant who makes no objection to the imposition of discretionary LFOs at sentencing is not automatically entitled to review." *Blazina*, 182 Wn.2d at 832. Subject to three exceptions, RAP 2.5(a) provides that an "appellate court may refuse to review any claim of error which was not raised in the trial court." The *Blazina* court noted that the appellants in that case "[did] not argue that one of the RAP 2.5(a) exceptions applie[d]." *Blazina*, 182 Wn.2d at 833.

In this case, Mr. Gleim argues that this court should review his unpreserved LFO challenge under RAP 2.5(a)(2), which provides that an appellant may raise the "failure to establish facts upon which relief can be granted" for the first time on appeal. In support of this argument, Mr. Gleim cites *Stedman v. Cooper*, 172 Wn. App. 9, 292 P.3d 764 (2012). In *Stedman*, a jury found the defendant liable for a car accident and the trial court awarded the plaintiff attorney fees under MAR 7.3. *Id.* at 21. The trial court relied on a controlling but erroneous Court of Appeals decision interpreting MAR 7.3, and

9

accordingly the defendant did not object to the plaintiff's fee award. *Id.* at 22. After the trial, the Washington Supreme Court reversed the controlling Court of Appeals decision. *Id.* at 23. The *Stedman* court agreed to review the case under RAP 2.5(a)(2) and reversed the trial court's fee award. *Id.* at 24-25.

This case is distinguishable from *Stedman*. The purpose of requiring an objection at the trial level is to give the trial court the opportunity to correct its error. *State v. Moen*, 129 Wn.2d 535, 547, 919 P.2d 69 (1996). In *Stedman*, an objection would not have given the trial court the opportunity to correct its error because the trial court correctly applied the Court of Appeals' interpretation of MAR 7.3 in effect at the time of trial, and the Washington Supreme Court later overruled that controlling authority. *Stedman*, 172 Wn. App. at 23. Here, unlike in *Stedman*, the Washington Supreme Court had already decided the controlling authority—*Blazina*. Consequently, had Mr. Gleim raised a timely objection at the sentencing hearing, the trial court could have corrected its error by inquiring into Mr. Gleim's financial resources and ability to pay. *Stedman* is distinguishable, and Mr. Gleim cannot appeal as a matter of right under RAP 2.5(a)(2).

The trial court imposed both mandatory and discretionary LFOs. The mandatory LFOs included the $500.00 victim assessment and the $100.00 deoxyribonucleic acid (DNA) collection fee. *See* RCW 7.68.035(1)(a); RCW 43.43.7541. These mandatory

10

LFOs are required irrespective of Mr. Gleim's ability to pay. *Lundy*, 176 Wn. App. at 103. However, the $775.00 court-appointed attorney fee, the $200.00 in "court costs," and the $64.10 sheriff's service fee were all discretionary LFOs.[4] *See* RCW 10.01.160(2) (authorizing "expenses specially incurred by the state in prosecuting the defendant"). The discretionary LFOs equal $1,039.10.

Under *Blazina*, the trial court was required to conduct an individualized inquiry into Mr. Gleim's financial resources *on the record* before it imposed LFOs, and was required to consider important factors such as incarceration and Mr. Gleim's other debts. The trial court's inquiry into Mr. Gleim's financial resources consisted of, "When you are employed, what is it that you do?" and Mr. Gleim's response, "Various general labor." RP at 12. This inquiry was insufficient under *Blazina*. Because Mr. Gleim's presence is required at resentencing, we exercise our discretion and direct the trial court to conduct an individualized inquiry consistent with *Blazina*.

---

[4] The $200 LFO may have been the criminal filing fee mandated by RCW 36.18.020(2)(h), but this court cannot make that assumption for purposes of this appeal. *State v. Kuster*, 175 Wn. App. 420, 425, 306 P.3d 1022 (2013). Moreover, the judgment and sentence does not list RCW 36.18.020(2)(h) as its basis for imposing the $200 fee.

11

*SAG ISSUE I:  Speedy sentencing*

The constitutional right to a speedy trial encompasses the right to speedy

sentencing. *State v. Ellis*, 76 Wn. App. 391, 394, 884 P.2d 1360 (1994).  A delay violates

speedy sentencing rights if it is "purposeful or oppressive." *Id.*  "This determination turns

on a balancing of four factors: (1) length of the delay; (2) reason for the delay; (3) the

defendant's assertion of his or her right; and (4) the extent of prejudice to the defendant."

*State v. Johnson*, 100 Wn.2d 607, 629, 674 P.2d 145 (1983), *overruled on other grounds

by State v. Bergeron*, 105 Wn.2d 1, 711 P.2d 1000 (1985).

Constitutional rights notwithstanding, speedy sentencing is also required by court

rule and statute.  CrR 7.1(a)(1) requires the court to set a date, time, and place for

sentencing in compliance with RCW 9.94A.500.  RCW 9.94A.500(1) requires a

sentencing hearing within 40 court days following conviction, subject only to an

extension for good cause on a motion by either party or the court.  "The trial court has

broad discretion to determine whether there is good cause to postpone sentencing." *State

v. Roberts*, 77 Wn. App. 678, 685, 894 P.2d 1340 (1995).  The same four *Johnson* factors

also provide guidance in determining whether a delay is unreasonable under CrR 7.1.

*Johnson*, 100 Wn.2d at 629-30.  When the parties do not have time to adequately review

the PSR, it is proper for a trial court to continue sentencing in order to give the parties

more time to review the PSR and to assure that the court is fully advised at the time it imposes sentence. *See State v. Halgren*, 87 Wn. App. 525, 538, 942 P.2d 1027 (1997), *rev'd on other grounds*, 137 Wn.2d 340, 971 P.2d 512 (1999).

Here, after balancing the four *Johnson* factors, we conclude that the trial court did not violate Mr. Gleim's right to speedy sentencing. First, the length of the delay between Mr. Gleim's guilty plea and the sentencing hearing was 93 days. While this amount of time exceeds the 40 days required by RCW 9.94A.500(1), it is significantly less than the amounts of time at issue in cases that held the defendant's rights were violated. *Compare Ellis*, 76 Wn. App. at 394 (two years violated defendant's speedy sentencing rights), *and State v. Edwards*, 93 Wn.2d 162, 167, 606 P.2d 1224 (1980) (over two years violated defendant's speedy sentencing rights), *with Johnson*, 100 Wn.2d at 630 (13 months did not necessarily violate defendant's sentencing rights).

Second, the trial court found that the reason for the delay was because the DOC had to obtain a lot of the information from Nevada in order to complete the PSR. The trial court continued the sentencing hearing on February 23 in order to give the parties time to review the PSR, which *Halgren* held is proper. Thus, there was good cause for the continuance under RCW 9.94A.500(1).

13

The third factor weighs in favor of Mr. Gleim—Mr. Gleim asserted his speedy sentencing rights by filing a motion to dismiss.

However, the final factor weighs against Mr. Gleim—the trial court found that Mr. Gleim was not prejudiced by the delay. Mr. Gleim's standard range was 77 to 102 months, and the trial court gave Mr. Gleim credit for time served. At the sentencing hearing, Mr. Gleim argued that he was prejudiced by the delay because he was assaulted in county jail while waiting for his sentencing hearing. However, Mr. Gleim was incarcerated in county jail for 143 days, and the record does not indicate whether this assault occurred before the plea hearing, or between the plea hearing and February 23, 2015, or after the February 23 continuance. Without this information in the record, we are unable to address Mr. Gleim's argument. Nor do we necessarily agree that an in-custody assault or any other unfortunate but foreseeable consequence of incarceration is the type of prejudice required to establish an illegal sentence. We conclude that the trial court did not violate Mr. Gleim's right to speedy sentencing.

*SAG ISSUE II: Sentence exceeding agreed recommendation*

Mr. Gleim states or implies various errors pertaining to the trial court sentencing him beyond the agreed recommendation. He argues that the sentencing delay and the PSR, with which he did not agree, prejudiced the trial court. He argues that prejudice is

14

established because the trial court disagreed with the sentence recommendation, and also because the trial court gave him an illegal sentence. He also argues that his attorney told him that the trial court would impose the agreed recommendation.

We reject the argument that prejudice can be established by a trial court rejecting an agreed sentence recommendation below the standard range or by a trial court being persuaded by a PSR. "The authority to sentence a defendant rests solely with the trial court. Although the State may agree to recommend a particular sentence, a trial court is free to ignore its recommendation." *State v. Talley*, 83 Wn. App. 750, 759, 923 P.2d 721 (1996), *aff'd*, 134 Wn.2d 176, 949 P.2d 358 (1998); *accord* RCW 9.94A.431(2). Generally, defendants cannot appeal standard range sentences. RCW 9.94A.585(1). However, a defendant may challenge the procedure by which a sentence within the standard range is imposed. *State v. Garcia-Martinez*, 88 Wn. App. 322, 329, 944 P.2d 1104 (1997). When a defendant has requested an exceptional sentence downward, review is limited to those instances when the court either (1) categorically refuses to impose an exceptional sentence downward under any circumstances, (2) relies on an impermissible basis for refusing to impose an exceptional sentence below the standard range, such as the defendant's race, sex, religion, or other characterization, such as drug dealer, or (3) fails to recognize it has discretion to impose an exceptional sentence downward. *Id.* at 330; *In*

*re Pers. Restraint of Mulholland*, 161 Wn.2d 322, 333-34, 166 P.3d 677 (2007). As long as the trial court has considered the facts and has concluded that an exceptional sentence downward is factually or legally insupportable, the defendant may not appeal its ruling. *Garcia-Martinez*, 88 Wn. App. at 330.

Here, the trial court informed Mr. Gleim during the guilty plea colloquy that it was not bound by any recommendations in the plea agreement, as required by RCW 9.94A.431(2). Further, the transcript from the sentencing hearing does not reflect that the trial court categorically refused to impose an exceptional sentence downward, relied on an impermissible basis, or failed to recognize its discretion. The trial court noted it had reviewed the PSR as well as its sentences from similar cases, and then stated:

> I understand the plea agreement to be 36 months and an exceptional sentence downward, but having said that, I'm going to follow the recommendation from the Department of Corrections and impose 102 months.

RP at 12. The trial court considered the facts and was clearly aware of its discretion to impose a sentence below the standard range. Mr. Gleim contends that the trial court did not impose such a sentence because it was prejudiced by the delay between the change of plea hearing and sentencing. However, the record reveals the trial court declined to impose such a sentence because it disagreed with Mr. Gleim's arguments that the relevant facts supported an exceptional sentence downward.

16

We conclude that the trial court properly exercised its discretion when it imposed a standard range sentence. As such, the sentence is not appealable.

Affirmed in part, reversed in part, and remanded for resentencing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.

Pennell, J.

17